GURNEY HEATER MANUFACTURING COMPANY *vs*. NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY.

Suffolk.    March 6, 1928. — September 20, 1928.

Present: RUGG, C.J., BRALEY, PIERCE, WAIT, & SANDERSON, JJ.

*Carrier*, Of goods: rates. *Department of Public Utilities. Contract*, Implied. *Statute*, Construction.

G. L. c. 159 was intended to cover the whole subject of intrastate rates of common carriers and to supersede the common law with respect thereto; and to confer upon the department of public utilities exclusive jurisdiction to determine the justice and reasonableness of such rates and to compel reparation by common carriers for the exacting of an unjustly discriminatory rate.

A shipper cannot recover from a railroad corporation in an action of contract at common law money paid by him to it for rates in excess of a reasonable and just amount on shipments wholly within this Commonwealth and occurring during a period of over four years, although, upon complaint by the shipper to the department of public utilities, the department has decided that, under G. L. c. 159, § 14, its power to order a railroad corporation to make reparation to shippers is confined to cases where an "unjustly discriminatory rate" has been collected, and that the rate complained of by the shipper could not be said to be of that character; and although its power to order such reparation is confined by said § 14 to payments made by shippers within two years before the filing with it of complaints.

CONTRACT.    Writ dated July 15, 1927.

Material allegations of the plaintiff's declaration, as amended, are described in the opinion.   The defendant demurred.   The demurrer was heard in the Superior Court by *Morton*, J., and was ordered sustained.   The plaintiff appealed from that order.

M. M. Horblit, (J. E. Doughty with him,) for the plaintiff.
A. W. Blackman, for the defendant.

RUGG, C.J.   This action of contract comes before us on appeal by the plaintiff from an order sustaining a demurrer of the defendant to the declaration.   The plaintiff's case is founded on the common law right of a shipper to recover moneys exacted from it by a common carrier of merchandise for rates in excess of a reasonable and just amount.   There are in the declaration appropriate allegations of fact in adequate detail on these points covering the period between July 7, 1922, and November 1, 1926, and relating exclusively to shipments having their beginning and ending and entire course of transportation wholly within this Commonwealth.

It is conceded by the defendant that at common law a common carrier has the restricted right to charge in each particular case of service a reasonable compensation and no more.   *Fitchburg Railroad* v. *Gage,* 12 Gray, 393, 399. *Interstate Commerce Commission* v. *Cincinnati, New Orleans & Texas Pacific Railway,* 167 U. S. 479, 493.   *Great Western Railway* v. *Sutton,* L. R. 4 H. L. 226, 237.   It likewise is conceded that the shipper, unless inhibited by statute, may maintain an action to recover from the common carrier the amount exacted by it in excess of a reasonable charge for the service rendered.   *Texas & Pacific Railway* v. *Abilene Cotton Oil Co.* 204 U. S. 426, 436.   *Evershed* v. *London & Northwestern Railway,* 2 Q. B. D. 254.   *Chicago & Northwestern Railway* v. *Osborne,* 3 C. C. A. 347, 348.

The question raised by the demurrer lies outside these settled principles.   It is whether the exclusive remedy of the shipper in these circumstances is by resort to the public utilities commission (hereafter called the commission) under the statutes.   Respecting this matter, it appears from the declaration that the plaintiff applied to the commission, as a part of the same petition whereby it sought to have fixed the just and reasonable rate to be charged by the defendant, for an order commanding the defendant to pay to the plaintiff, by way of reparation for the unlawful charges exacted, damages in such sum as the commission might determine that the plaintiff was entitled to receive.   Touching that matter the commission decided that it had no "authority to award reparations in the nature of damages as at common

law," that its jurisdiction to order reparations was confined to cases where an "unjustly discriminatory rate . . . or charge" had been collected, and that there was no convincing evidence in the case "that the charges collected were unjustly discriminatory."

It is manifest from an examination of G. L. c. 159 that the General Court has conferred upon the department of public utilities, which is under the control of a commission of five members (G. L. c. 25, § 1) extensive powers of "supervision and regulation of, and jurisdiction and control over," all common carriers including railroad corporations and particularly including "The transportation or carriage of persons or property, or both."   § 12.   The commission is authorized to "inquire into the rates, charges, regulations, practices, equipment and services of common carriers in this Commonwealth."   § 13.   Especially pertinent provisions are in these words:  § 14 "Whenever the department shall be of opinion . . . that any of the rates, fares or charges of any common carrier for any services to be performed within the Commonwealth . . . are unjust, unreasonable, unjustly discriminatory, unduly preferential . . . , the department shall determine the just and reasonable rates, fares and charges to be charged for the service to be performed, and shall fix the same by order to be served upon every common carrier by whom such rates, fares and charges or any of them are thereafter to be observed.   Every such common carrier shall obey every requirement of every such order served upon it, and do everything necessary or proper in order to secure absolute compliance with every such order by all its officers, agents and employees.   . . . If complaint is made to the department concerning any rate, fare or charge demanded and collected by any railroad corporation for any service performed and the department finds after hearing and investigation that an unjustly discriminatory rate, fare or charge has been collected for any service, the department may order the railroad corporation which has collected the same to make due reparation to the person who has paid the same, with interest from the date of the payment of such unjustly discriminatory amount; but such order of reparation shall

cover only payments made within two years before the date of filing the petition seeking to have reparation ordered. . . . in no case shall any such order be made until the department shall be satisfied by such investigation as may be necessary that the rate, fare or charge collected was in fact unjustly discriminatory"; and (§ 17) "All charges made, demanded or received by any common carrier for any service rendered or performed, . . . shall be just and reasonable, and every such common carrier . . . shall be entitled to make, demand and receive just and reasonable charges for any such service, and every unjust or unreasonable charge is hereby prohibited and declared unlawful." Ample powers to enforce by proceedings in courts the requirements of the chapter and the orders of the commission are conferred by §§ 1, 39, 40.

We think it is plain that this statute is intended to cover the whole subject of rates by railroad corporations. It affords a wide field of relief to members of the public by enabling the commission to fix rates and to enforce all its orders and all the provisions of law. It is settled that the implication of a statute of such comprehensive sweep is to supersede all the common law. *Godfrey* v. *Building Commissioner of Boston,* 263 Mass. 589, 592, 593, and cases there collected. *Attorney General* v. *New York, New Haven & Hartford Railroad,* 197 Mass. 194, 198. *Thayer* v. *Kitchen,* 200 Mass. 382, 386.

Further discussion of the issues here raised is unnecessary because of the decision in *Boston* v. *Edison Electric Illuminating Co. of Boston,* 242 Mass. 305. That was an action to recover payments exacted by the defendant of the plaintiff for rates for electric light alleged to have been in excess of a reasonable charge. The principle of the common law relied upon by the plaintiff in the case at bar was there fully recognized. But it was held that the power vested in a public board of reducing the price charged under § 93, and of fixing the price under § 94 of G. L. c. 164, superseded the common law. Those powers are no more extensive than those conferred by G. L. c. 159. The statement and analysis in that decision of the controlling principles leave nothing further to be said respecting the issues presented in the case at bar.

Every contention put forward by the present plaintiff is fully and adversely answered by the doctrines there amplified.

*Order sustaining demurrer affirmed.*