William Papetti *vs.* Bernadino Alicandro.

Worcester.    September 25, 1944. — December 7, 1944.

Present: Field, C.J., Qua, Dolan, Wilkins, & Spalding, JJ.

*Carrier*, Of goods. *Jurisdiction*, Public utilities, Carrier. *Public Utilities.*
*Practice, Civil*, Auditor: amendment of report. *Estoppel.*

No provision of c. 159B, as inserted in G. L. (Ter. Ed.) by St. 1934, c.
264, or as amended or as revised by St. 1938, c. 483, repealed by
implication the right of any party to a carriage of goods by motor
vehicle to bring an action in his own name for an overpayment of a
scheduled rate, or for an underpayment even if effected by way of
rebate. Per Wilkins, J.

The provisions of G. L. (Ter. Ed.) c. 159B, as amended and revised, did
not oust the courts of jurisdiction of an action at law by a carrier of
goods by motor vehicle for the difference between an amount re-
ceived from a shipper and an amount which he should have received
according to a reasonable minimum rate legally established under
the statute.

Although a motion to strike out a portion of an auditor's report is an
appropriate method of seeking an elimination of findings based on
alleged errors of law apparent on its face, a motion so to strike out
and also to substitute other matter for that struck out was improper
even though the matter sought to be substituted was a correct con-
clusion of law on the auditor's findings; an appropriate method of
achieving the result so intended would have been by requests for rul-
ings or instructions at the hearing or trial on the merits.

A carrier of goods by motor vehicle was entitled to maintain an action
at law against a shipper for the difference between a sum received
from him for services as a common carrier and as a contract carrier
and a sum which the plaintiff should have received according to a
reasonable minimum rate legally established under G. L. (Ter. Ed.)
c. 159B, as amended and as later revised by St. 1938, c. 483, where
his evidence showed an arrangement between the parties whereby he
at frequent intervals gave statements to the defendant of his charges
at the legally established rate, and, whenever such a statement was
received, the defendant forthwith paid him at that rate and he as a
part of the same transaction paid back to the defendant the difference
between the sum so received and an amount which he would receive
at a less rate; such transactions resulted in unlawful rebates in viola-
tion of the statute.

A carrier of goods by motor vehicle was not estopped to maintain an
action against a shipper to recover a portion of a legally established
minimum rate which the plaintiff had unlawfully rebated to the
defendant in violation of G. L. (Ter. Ed.) c. 159B, as amended and as
later revised by St. 1938, c. 483.

CONTRACT. Writ in the Central District Court of Worcester dated February 17, 1941.

On removal to the Superior Court, the case was referred to an auditor and was later tried before *Beaudreau*, J.

*C. W. Proctor*, for the plaintiff.

*H. H. Hartwell & J. F. Driscoll*, for the defendant, submitted a brief.

WILKINS, J. In this action of contract the plaintiff, a contract carrier and later a common carrier under G. L. (Ter. Ed.) c. 159B, as added by St. 1934, c. 264, and revised by St. 1938, c. 483, alleging that he carried gasoline and fuel oil for the defendant and had been paid less than the minimum rates prescribed by the department of public utilities, seeks to recover the difference between the minimum rates and the amounts actually received. The case was referred to an auditor, findings of fact not to be final, and he filed a report. At a jury trial the judge directed a verdict for the defendant, and the plaintiff excepted.

The auditor's report was in substance as follows: The plaintiff was a contract carrier under St. 1934, c. 264, from February 18, 1937, until July 5, 1938, and continued as such under St. 1938, c. 483, until March 12, 1940, when he became instead a common carrier under the latter act. In both capacities he was authorized to carry gasoline, fuel oil, and similar commodities over the ways of the Commonwealth in motor vehicles. During the entire period the department of public utilities established minimum rates for the carriage of such commodities by contract and common carriers. The plaintiff, when a contract carrier and later when a common carrier, published and filed with the department and kept open for public inspection tariffs showing all rates and charges for the transportation of property and all services for the transportation of gasoline, fuel oil, and similar commodities requiring transportation by means of tank trucks. During this period the plaintiff carried gasoline and fuel oil upon order of the defendant from places in this Commonwealth to the fuel depository of the defendant. At frequent intervals a statement of charges due the plaintiff for carriage at the legally established rate

was given the defendant. Whenever such a statement was received, payment in full, in almost every instance by check, was forthwith made to the plaintiff. When each statement was prepared by the plaintiff, he also computed the amount which he would receive at a less rate. After payment was made to the plaintiff at the legal rate, the plaintiff paid the defendant the difference in cash. The respective acts of payment by the defendant and by the plaintiff took place upon the same occasion, usually at the defendant's place of business. This practice was acquiesced in by both parties. The third paragraph of the auditor's report, with brackets supplied to show the effect of a motion quoted below, was: "The plaintiff seeks to recover the amount of money so rebated, which in the aggregate was $1,159.51. He relies upon the legal proposition that where minimum rates for the charges of carriers are duly established, as in this case, the carrier is entitled to recover the legal established minimum rate. [I conclude upon the foregoing facts that the plaintiff has received for the services rendered payment in accordance with the legally established minimum rate, even though there was a voluntary rebate immediately after payment and there should be judgment for the defendant. If, however, my conclusion is wrong, and the facts I have found do not amount to a payment to the plaintiff, and there is no legal bar to the plaintiff's recovery under these circumstances, the plaintiff should receive the difference between the amount received by the plaintiff and the amount to which he is entitled, or $1,159.51. The difference between the amount received by the plaintiff while he was a contract carrier under the provisions of Chapter 264 of the Acts of 1934 and the amount to which he is entitled during this period is $232.11; and the difference between the amount received by the plaintiff while he was a contract carrier under the provisions of Chapter 483 of the Acts of 1938 and the amount to which he is entitled during this period is $624.60; and the difference between the amount received by the plaintiff while he was a common carrier under said act and the amount to which he is entitled during this period is $302.80, or a total of $1,159.51.

There should be judgment for the plaintiff in such amount as the court may rule he is entitled to recover while transporting under any or all of said periods.]"

The portion of the foregoing quotation enclosed in brackets was the subject of the following motion: "Plaintiff moves that the auditor's report be amended by striking out everything after the first two sentences in paragraph 3 and substituting therefor the following: 'Upon the foregoing facts the plaintiff received [*sic*] a rebate for services rendered or less than the legally established minimum rate and is therefore entitled to recover the difference or the sum of $1,159.51 made up as follows: as a contract carrier under Chapter 264 of the Acts of 1934, $232.11; as a contract carrier under Chapter 483 of the Acts of 1938, $624.60; and as a common carrier under said act, $302.80.'" The motion was heard by a judge, who denied it. The plaintiff did not except or appeal. Subsequently the case was reached for trial before a judge sitting with jury. Before the jury was empanelled the plaintiff filed a motion which was identical with the earlier motion. The judge refused to accept the motion for the reason that it had been previously presented, "denied and ordered it marked for identification and also marked as follows: 'Presented Jan. 24, 1944. Refused on same date,' and refused to consider the motion at all." The plaintiff excepted. The jury was empanelled, and the plaintiff offered in evidence and read the auditor's report, and rested. The judge stated that he would direct a verdict for the defendant. The defendant's counsel said that he had not rested, and that he desired to introduce evidence in contradiction of the facts found by the auditor. The judge directed a verdict for the defendant, and the plaintiff excepted. The parties stipulated, "The defendant did not rest. If the Supreme Judicial Court shall sustain the exception of the plaintiff to the direction of a verdict for the defendant, the case shall be remanded to the Superior Court for trial upon all the issues involved in the case."

1. The defendant challenges the jurisdiction of the courts on the ground that the subject matter is exclusively confided to the department of public utilities, which, it is

contended, is invested by G. L. (Ter. Ed.) c. 159B with "complete jurisdiction, control and supervision of all carriers by motor vehicles for hire of property within the Commonwealth." Assuming this to be true as a general proposition, it does not follow that the statute has ousted the courts of jurisdiction of actions like the case at bar. The present action, in effect, is brought for the enforcement of the schedule of rates established under the act. *Vicksburg, Shreveport & Pacific Railway* v. *Paup*, 47 Fed. (2d) 1069. *Wisconsin Bridge & Iron Co.* v. *Illinois Terminal Co.* 88 Fed. (2d) 459, 462. *Cleveland, Cincinnati, Chicago & St. Louis Railway* v. *Edgewater Coal Co.* 272 Ill. App. 149, 154. But see *Michigan Central Railroad* v. *T. M. Partridge Lumber Co.* 17 Fed. (2d) 657, 658; *S. C.* 26 Fed. (2d) 615, 616. If carried to the full extreme the same argument might be urged to prevent an action by a carrier against a shipper who might for any reason fail or refuse to pay the regularly established transportation rates. The burden is strongly on him who asserts that the fundamental right of all persons of access to the courts has in some particular been taken away by legislation.

The regulation of carriers of property by motor vehicle, G. L. (Ter. Ed.) c. 159B, was inserted by St. 1934, c. 264, and amended by St. 1935, c. 24, St. 1936, c. 345, St. 1937, c. 122, St. 1937, c. 381, and St. 1938, c. 332. The chapter was wholly redrafted by St. 1938, c. 483. *Becker Transportation Co. Inc.* v. *Department of Public Utilities*, 314 Mass. 522, 523. It was amended by St. 1939, c. 171, and St. 1939, c. 307, and by other statutes subsequent to the date of the writ in the case at bar. Both the 1934 and the 1938 enactments, as amended, require that common and contract carriers obtain certificates from, and file schedules or tariffs of rates with, the department of public utilities, which was empowered to fix rates.

Both enactments prohibit undercharges and denounce rebates. By G. L. (Ter. Ed.) c. 159B, § 2, as inserted by St. 1934, c. 264, § 1, and as amended by St. 1936, c. 345, § 1, it is provided, "No person shall charge, demand, exact, receive or collect for any service rendered an amount greater

or less than the rate specified in such schedule or schedules, nor shall any such carrier refund or remit in any manner by any device any portion of the rate so specified." Section 6 of said c. 159B, as inserted by St. 1934, c. 264, § 1, and as amended by St. 1936, c. 345, § 2, gives the department power to "prescribe the minimum rates and charges of contract carriers in competition with . . . common carriers to be collected by such contract carriers. Said rates and charges of contract carriers in general shall not be less than those charged by such common carriers for substantially the same or similar service." In § 10A of said c. 159B, as added by St. 1936, c. 345, § 6, it is said, "No person whether carrier, shipper, consignee or broker, and no officer, employer, agent or representative thereof, (1) shall knowingly offer, grant, or give, or solicit, accept or receive, any rebate, concession or discrimination in violation of any provision of this chapter, or (2) by means of any false statement or representation, or by the use of any false or fictitious bill, bill of lading, receipt, voucher, roll, account, claim, certificate, affidavit, deposition, lease or bill of sale, or by any other means or device, shall knowingly and wilfully assist, suffer or permit any person or persons to obtain transportation of property subject to this chapter for less than the applicable rate or charge, or (3) shall knowingly and wilfully by any such means or otherwise fraudulently seek to evade or defeat regulation as in this chapter provided." Section 11 of said c. 159B, as inserted by St. 1934, c. 264, § 1, is, "The provisions of section fifteen of chapter one hundred and fifty-nine A shall apply to violations of any provision of this chapter." Said § 15 contains criminal penalties for violation of c. 159A, which regulates common carriers of passengers by motor vehicle, and also provides that "the supreme judicial and superior courts shall have jurisdiction in equity to restrain any such violation upon petition of the department, any licensing authority, ten citizens of any city or town affected by such violation, or any interested party." "The provisions of G. L. (Ter. Ed.) c. 159A, § 15, are enacted for the purpose of permitting persons affected to restrain a violation of its terms." *Leroy* v. *Worcester*

*Street Railway*, 287 Mass. 1, 9. It cannot be said that these provisions, even in the light of the jurisdiction of the Supreme Judicial Court under G. L. (Ter. Ed.) c. 25, § 5, to enforce valid orders of the department, demonstrate a legislative intent to deprive an individual of any right of action at common law, even though it arose out of a transaction which was a rebate from the lawful rates.

We now consider the 1938 enactment revising G. L. (Ter. Ed.) c. 159B. It is declared to be part of the legislative policy to "Promote adequate, economical and efficient service by motor carriers, and reasonable charges therefor, without unjust discriminations, undue preferences or advantages or unfair or destructive competitive practices." (§ 1.) "No common carrier by motor vehicle shall charge, demand, collect or receive a different compensation for transportation or for any service in connection therewith between the points enumerated in such tariff than the rates and charges specified in the tariffs in effect at the time; and no such carrier shall refund or remit in any manner or by any device, directly or indirectly, or through any agent or broker or otherwise, any portion of the rates or charges so specified, or extend to any person any privilege or facilities for transportation except such as are specified in its tariffs." (§ 6.) "No . . . [contract] carrier shall demand, charge or collect compensation for such transportation less than that provided for in his written contract and the minimum schedule of charges, if any, filed therewith, or prescribed by the department from time to time, and no such carrier, by the furnishing of any special service, facility or privilege, or by any other device whatsoever, shall in effect charge, accept or receive for any transportation or service less than the minimum charge." (§ 7[b].) "No person shall (1) knowingly offer, grant or give, or solicit, accept or receive, any rebate, concession or discrimination in violation of any provision of this chapter, or (2) by means of any false statement or representation, or by the use of any false or fictitious bill, bill of lading, receipt, voucher, roll, account, claim, certificate, affidavit, deposition, lease or bill of sale, or by any other means or device, knowingly or wilfully assist,

suffer or permit any person to obtain transportation of property subject to this chapter for less than the applicable rate or charge, or (3) by any such means, or otherwise, fraudulently seek to evade or defeat regulation as in this chapter provided." (§ 19.) Section 21 establishes criminal penalties, and provides: "in addition, the supreme judicial and superior courts shall severally have jurisdiction in equity to restrain any such violation upon petition of the department, or of any person, organization or body politic affected by such violation. Any such person, organization or body politic may file with the department a complaint of any such violation, and the department shall promptly investigate such complaint, and may hold a hearing on the question of revocation of the certificate, permit or license of any motor carrier, broker or interstate licensee complained against and may institute in any court of the commonwealth in the county or district wherein the carrier shall have a place of business such action, suit or complaint as may be necessary to enforce compliance with any provision of this chapter or any rule, regulation or order of the department thereunder, or any lawful requirement, condition, limitation or restriction contained in any certificate, permit or license." The provision for injunctive relief is analogous to that quoted from G. L. (Ter. Ed.) c. 159A, § 15. It indicates no purpose to do away with individual rights of action at common law. We are also of opinion that the same is true of the provision enabling the department to "institute in any court . . . such action, suit or complaint as may be necessary to enforce compliance with any provision of this chapter." Whatever its scope, we think that at least it is not tantamount to a repeal by implication of the right of the parties to a carriage of goods by motor vehicle to bring their own actions for overpayments of the scheduled rates, or for underpayments, even by way of rebate. One of the objects of the legislation was to secure equality of rates. Every means to insure this purpose must be preserved in the absence of clear statutory prohibition. The construction urged by the defendant would hamper the achievement of the legislative purpose.

The defendant relies upon *Boston* v. *Edison Electric Illuminating Co. of Boston,* 242 Mass. 305, and *Gurney Heater Manuf. Co.* v. *New York, New Haven & Hartford Railroad,* 264 Mass. 427. These are distinguishable as actions in substance seeking in an individual case the establishment of a reasonable rate which plainly was for the department of public utilities alone to determine for the public in general. This distinction clearly appears in the *Edison* case at page 312: "If every dissatisfied customer can bring an action at common law, it is obvious that no schedule as established could have any degree of uniformity and permanency." Here the rates are established and their reasonableness not in dispute.

The courts, accordingly, had jurisdiction of the plaintiff's causes of action under G. L. (Ter. Ed.) c. 159B, both before and after the amendment by St. 1938, c. 483.

2. There was no error in the denial of the plaintiff's motions to amend the auditor's report. A motion to strike out is an appropriate method of eliminating findings based upon errors of law apparent on the face of an auditor's report. *Petitti* v. *Perriello,* 305 Mass. 274, 275, and cases cited. See G. L. (Ter. Ed.) c. 221, § 56. But the plaintiff's motion, which must be treated as an entirety, did not attempt merely to strike out part of the report; it also endeavored to substitute other matter. There is no support in law for such a motion albeit the new matter sought to be substituted constitutes a correct conclusion of law on the findings of the auditor. An appropriate method of achieving the intended result would have been by requests for instructions. *Ferrairs* v. *Hewes,* 301 Mass. 116, 121, and cases cited.

3. When the auditor's report was introduced in evidence, however, and the judge directed a verdict for the defendant, the substance of the question unsuccessfully sought to be raised by the plaintiff's motions became important for a different reason. The governing question of law then was whether the jury might warrantably draw an inference of fact from the subsidiary findings contrary to the conclusion of the auditor, *Fisher* v. *Doe,* 204 Mass. 34, 41, *Cook* v.

*Farm Service Stores, Inc.* 301 Mass. 564, 567–568, and cases cited. *Lakeville* v. *Cambridge*, 305 Mass. 256, 260. *S. C.* 307 Mass. 433, 437. We have no hesitation in saying that solely on the auditor's report the jury would not have been warranted in drawing any but the contrary inference, for on the facts found the transactions were rebates violative of G. L. (Ter. Ed.) c. 159B. Reasonably interpreted the declaration is broad enough to include them.

Unless the plaintiff is prevented by some rule of law, he is entitled to maintain this action. We think that the plaintiff not only is not so barred, but that it is both his right and duty to recover the rebates. The provisions of G. L. (Ter. Ed.) c. 159B, as inserted by St. 1934, c. 264, and as revised by St. 1938, c. 483, bear resemblance respectively to the provisions of the interstate commerce act, U. S. C. (1940 ed.) Title 49, as to railroads, §§ 6, 2, 10, and as to common carriers by motor vehicle, §§ 316–327, the latter being first enacted in 1935 (49 U. S. Sts. at Large, 558–567). With respect to the former Federal enactment numerous decisions of the Supreme Court of the United States and of this court are authorities for the plaintiff. "Neither the intentional nor accidental misstatement of the applicable published rate will bind the carrier or shipper. The lawful rate is that which the carrier must exact and that which the shipper must pay." *Kansas City Southern Railway* v. *Carl*, 227 U. S. 639, 653. The "effect of filing schedules of rates with the Interstate Commerce Commission was to make the published rates binding upon shipper and carrier alike, thus making effectual the purpose of the act to have but one rate, open to all alike and from which there could be no departure." *Boston & Maine Railroad* v. *Hooker*, 233 U. S. 97, 112. "The transaction between the parties amounted to an assumption by the consignee to pay the only lawful rate it had the right to pay or the carrier the right to charge. The consignee could not escape the liability imposed by law through any contract with the carrier." *New York Central & Hudson River Railroad* v. *York & Whitney Co.* 256 U. S. 406, 408. *Pittsburgh, Cincinnati, Chicago & St. Louis Railway* v. *Fink*, 250 U. S.

577, 582. See *Texas & Pacific Railway* v. *Mugg*, 202 U. S. 242; *Texas & Pacific Railway* v. *Abilene Cotton Oil Co.* 204 U. S. 426, 445–446; *Louisville & Nashville Railroad* v. *Mottley*, 219 U. S. 467, 485–486; *Kansas City Southern Railway* v. *Carl*, 227 U. S. 639, 652; *Louisville & Nashville Railroad* v. *Maxwell*, 237 U. S. 94, 98; *Baldwin* v. *Scott County Milling Co.* 307 U. S. 478, 484–485. In *Lowden* v. *Simonds-Shields-Lonsdale Grain Co.* 306 U. S. 516, 521, it was said, "This court has had occasion recently to sustain action of the Commission aimed at carriers' practices resulting in collection of less than the tariff rate. It is equally important to aid the efforts of a carrier in collecting published charges in full. Involuntary rebates from tariff rates should be viewed with the same disapproval as voluntary rebates." "The lawful rate as established by the rates and schedules filed by the carrier must be collected." *American Railway Express Co.* v. *Mohawk Dairy Co.* 250 Mass. 1, 6–7. The carrier cannot be estopped to do so. *New York, New Haven & Hartford Railroad* v. *York & Whitney Co.* 215 Mass. 36, 40. *Railway Express Agency, Inc.* v. *Michelson*, 311 Mass. 704, 706. *Sola Electric Co.* v. *Jefferson Electric Co.* 317 U. S. 173, 176. See cases collected in 13 C. J. S., Carriers, § 397. See also *Perkins* v. *New York, New Haven & Hartford Railroad*, 232 Mass. 336, 339; *W. H. Blodget Co.* v. *New York Central Railroad*, 261 Mass. 365, 370; *New York, New Haven & Hartford Railroad* v. *Lord & Spencer, Inc.* 273 Mass. 583, 586. The usual principles of illegality in contracts have no application. See *Metz Co.* v. *Boston & Maine Railroad*, 227 Mass. 307, 309–310. The established rates are a matter of public right, and only the running of the statute of limitations can preclude a carrier from recovering the full amount. As was said in *Louisville & Nashville Railroad* v. *Central Iron & Coal Co.* 265 U. S. 59, 65, "No contract of the carrier could reduce the amount legally payable; or release from liability a shipper who had assumed an obligation to pay the charges. Nor could any act or omission of the carrier (except the running of the statute of limitations) estop or preclude it from enforcing payment of the full amount by a person liable therefor." See *Mid-*

*state Horticultural Co. Inc.* v. *Pennsylvania Railroad,* 320 U. S. 356; *Louisville & Nashville Railroad* v. *Dickerson,* 191 Fed. 705, 709; *McFadden* v. *Alabama Great Southern Railroad,* 241 Fed. 562, 565; *Louisville & Nashville Railroad* v. *Williamson,* 87 Fed. (2d) 34, 35; *Pennsylvania Railroad* v. *Titus,* 216 N. Y. 17, 22.

The exceptions are sustained, and in accordance with the stipulation the case is to stand for trial in the Superior Court.

*So ordered.*