SALVATORE BADOLOTO *vs.* THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY.

Worcester.    September 23, 1958. — January 20, 1959.

Present: WILKINS, C.J, WILLIAMS, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Railroad,* Grade crossing, Statutory signals, Spur track. *Negligence,* Railroad: grade crossing; Contributory; Violation of law; Motor vehicle; Grade crossing. *Motor Vehicle,* Operation. *Practice, Civil,* Auditor: rulings of law, striking matter from report.

Evidence of the circumstances in which the operator of a motor truck crossed from the north a grade crossing of a paved driveway and a spur railroad track located on private property between and close to a warehouse on the south side and another building on the north side, looked westerly down the track but saw nothing, "turned his truck clockwise in a three-quarters circle" and recrossed the track, and then "maneuvered" the truck to back it to a loading platform at the east end of the warehouse, whereupon an engine drawing freight cars from the west came around a curve in the track at the west end of the warehouse and struck the tailboard of the truck did not require a ruling as matter of law that the operator of the truck was guilty of contributory negligence or that he proceeded over the crossing in violation of G. L. c. 90, § 15, as appearing in St. 1951, c. 557. [427]

Badoloto *v.* New York, New Haven & Hartford Railroad.

Where a collision of a motor truck and a railroad engine occurred on private property at a grade crossing of a spur track and a paved driveway which was not a public way nor a "traveled place" where, pursuant to G. L. c. 160, § 141, signboards were or should have been maintained by the railroad, § 138 of c. 160 was inapplicable and failure of the railroad to give the signals therein specified afforded the operator of the motor truck no right of action against it under § 232 for injuries sustained in the collision. [427]

Before introduction in evidence of the report of an auditor at a new trial of an action against a railroad by the operator of a motor truck to recover for injuries sustained in a collision between the truck and an engine at a grade crossing, rulings of law and certain references to irrelevant matters should be expunged by the trial judge from the auditor's report in accordance with the defendant's seasonable motion, but a passage in the report stating certain prudent action which the conductor of the train might have taken but did not take might properly remain in the report in the circumstances. [428]

TORT. Writ in the Central District Court of Worcester dated February 14, 1956.

Upon removal to the Superior Court, the action was tried before *McCooey*, J., a District Court judge sitting under statutory authority.

The case was submitted on briefs.

*Noel W. Deering*, for the defendant.

*Joseph A. Aspero*, for the plaintiff.

WILLIAMS, J. This is an action of tort to recover for personal injuries and damage to a motor truck resulting from a collision of the truck with a diesel engine of the defendant on March 16, 1954, at Clinton. The declaration is in two counts in each of which the negligence of the defendant is alleged. The case was first referred to an auditor and later submitted to a jury on his report. The case is here after verdicts for the plaintiff on the defendant's exceptions to the denial of its motion for directed verdicts; to the denial of a motion to strike out certain parts of the auditor's report; to the denial of requests for instructions; and to portions of the judge's charge.

We summarize so much of the auditor's report as is material to the exceptions. The collision occurred in the mill yard of the Colonial Press, Inc., which was located on the southerly side of Green Street. A spur track of the defend-

ant ran through the yard in a westerly direction and between two long brick buildings located "almost opposite" each other. The space between them varied from a width of forty feet to one of fifteen feet. The building on the south of the track was three hundred feet long and at its easterly end was occupied by Empire Furniture Co. as a warehouse. It is referred to as the warehouse building. The building on the north, known as No. 16, was somewhat longer and had a loading platform at its easterly end. After passing between the buildings the track curved somewhat to the left or south to a building of the New England Distillery and terminated at the loading platform of the Van Brode Milling Co. At the easterly beginning of this curve a ten foot jog in the warehouse building narrowed the distance between it and No. 16 to fifteen or twenty feet.

The plaintiff drove his two ton truck, which had a semi-van body, into the yard to deliver a load of chrome to the warehouse of the Empire Furniture Co. He entered from Green Street by a paved driveway which approached the warehouse from the northeast going by the east side of No. 16 and crossing the spur track. He then "turned his truck clockwise in a three-quarters circle" and then "maneuvered it further to place it in position to back the truck to the warehouse loading platform." This brought the truck to a point where it was parallel with and close to the loading platform on the easterly end of No. 16. Before making his turn the plaintiff looked down the track between the buildings but could only see as far as the jog in the warehouse which was eighty-five feet from the easterly end of No. 16.

An engine of the defendant drawing three freight cars from the vicinity of the Van Brode Milling Co. came from around the jog and the right front of the engine struck the tailboard of the truck which was four feet long and was the only part of the truck over the track. The truck was damaged and the plaintiff was injured.

The auditor recited the following testimony of the defendant's engineer and fireman. The engineer said that he was bringing out three cars from the Van Brode Milling Co.

loading area which was fifty to one hundred feet west of the jog. He intended to leave two of the cars on a side track east of the warehouse. His crew consisted of a fireman and a conductor. The engine was fifty to sixty feet in length and he was seated on the right of the cab thirty feet behind the front of the engine. He could not see the left side of the track and as he approached the jog, his clearance on the right being only about a foot and a half from the warehouse building, he could not put his head out of the window to look ahead on the right. The fireman on his left had "even less visibility" because of the curve to the right. The fireman said that the engine was going at a speed of from three to five miles an hour and when "the engine got part way around the curve and was fifteen to twenty-five feet from the southeast corner of No. 16 . . . [he] saw the plaintiff's truck ahead and called 'Whoa! Hold it. There's a truck ahead.'" The engineer immediately applied the brakes and the train stopped suddenly.

The auditor found that the plaintiff "did not see the engine at any time before the impact." It was not possible for him to see it "because of the curve in the track, the corner of No. 16, and his position in the truck while backing it." He concluded that "In order for the plaintiff to have detected the presence of the train on this day, it would have been necessary for him to have stopped his truck before reaching the crossing, got down out of it and walked down the tracks in a westerly direction for 100 to 150 feet. If he had then seen the train stopped, he could have returned to his truck and waited for the train to start up and come out before crossing the track; or else go up to the train and find out from the crew how long the train was going to be there and whether it was safe for him to return to his truck and cross the track ahead of the train. I do not believe that the provisions of c. 90, § 15, required the plaintiff under these conditions to go to this extent before crossing the railroad track with his truck. To do so would interfere seriously with the business being conducted in the mill yard and impede deliveries to this warehouse. I find that the plaintiff did not

violate the provisions of G. L. (Ter. Ed.) c. 90, § 15.  I
further find that he was not guilty of contributory negli-
gence. . . . It would have been an easy matter costing little
in time or money for the conductor to have walked ahead of
the train to determine if any trucks or persons were in the
vicinity and to warn any such including the plaintiff of the
approach of the train and also the engineer and fireman of
the presence of the truck.  The conductor or another mem-
ber of the train crew could have done this much easier and
more efficiently than the operator of the truck who had no
helper with him.  The evidence was conflicting whether the
signal bell on the engine was being rung at the time of the
accident or not.  The engineer and fireman both testified
that after the engine was started in motion the bell was
turned on and operating on automatic control and was ring-
ing at the time of the accident.  The plaintiff testified that
he did not hear the bell and the conductor testified that he
did not hear the bell.  No one in the warehouse heard the
bell.  There was no bell ringing after the accident.  I find
that the defendant did not ring the bell or give any signal
before the accident.  I find that the defendant was under a
legal duty of warning the plaintiff of the approach of the
train by bell, signal or verbal warning from one of the train
crew.  I find that the defendant violated this duty and was
negligent in so doing which negligence caused the accident."

Before the report was introduced in evidence the defend-
ant moved to expunge from it certain numbered passages:
"2. . . . 'I do not believe that the provisions of c. 90, § 15,
required the plaintiff under these conditions to go to this
extent before crossing the railroad track with his truck.  To
do so would interfere seriously with the business being con-
ducted in the mill yard and impede deliveries to this ware-
house.' 3. . . . 'It would have been an easy matter costing
little in time or money for the conductor to have walked
ahead of the train to determine if any trucks or persons
were in the vicinity and to warn any such including the
plaintiff of the approach of the train and also the engineer
and fireman of the presence of the truck.  The conductor or

another member of the train crew could have done this much easier and more efficiently than the operator of the truck who had no helper with him.' 4. . . . 'I find that the defendant was under a legal duty of warning the plaintiff of the approach of the train by bell, signal or verbal warning from one of the train crew.' 5. . . . 'violated this duty and' and 'in so doing.'"

The motion was denied as to these passages and the defendant excepted. It also excepted to the denial of its motion for directed verdicts and to the refusal of the following requests for instructions: "1. The evidence does not warrant a finding that the crossing in question was a public way or travelled place within the meaning of G. L. (Ter. Ed.) c. 160, §§ 138, 141. . . . 2. The evidence does not warrant a finding that at the crossing where the accident occurred the defendant was under any duty to give the signals required by statute at a public way, or travelled place as defined by G. L. c. 160, § 141."

The area of the mill yard in which the collision occurred was private property owned by Colonial Press, Inc. Neither its area nor the extent of the defendant's trackage is disclosed. Apparently there were several buildings in the yard occupied by different tenants and both truck and train were properly in the yard on matters of business with the tenants, with equal rights to its use. See *McTighe* v. *Union Freight R.R.* 274 Mass. 312, 314.

It is provided by G. L. c. 90, § 15, as appearing in St. 1951, c. 557, that "every person operating a motor vehicle, upon approaching a railroad crossing at grade, shall reduce the speed of the vehicle to a reasonable and proper rate before proceeding over the crossing, and shall proceed over the crossing at such rate of speed and with such care as is reasonable and proper under the circumstances." It is a penal statute. The amendment inserted the last clause in substitution for "shall proceed cautiously over the crossing" a provision the application of which has been the subject of a long line of judicial decisions. Whether the present language has effected any real change in the nature of the conduct

intended to be penalized requires no discussion since in our opinion the question of the caution or care exercised by the plaintiff in the circumstances was for the jury to determine. There is no finding of the relative locations of the track and the loading platform toward which the plaintiff was backing his truck nor of the position of the truck in relation to the paved way on which he had passed the easterly end of No. 16. If, however, it be assumed that he was backing across the track at a place which the railroad ought reasonably to have expected would be used to approach the Empire Furniture Co. loading platform, it could not be ruled as matter of law that he was proceeding over a crossing in violation of § 15. There was no error in this aspect of the case in denying the defendant's motion for directed verdicts.

We think, however, the judge was at fault in dealing with the applicability of the statutes pertaining to train signals. Under G. L. c. 160, § 138, it is the duty of a railroad to ring a bell or blow a whistle at a certain distance from the place "where the railroad crosses upon the same level any public way or traveled place over which a signboard is required to be maintained as provided in sections one hundred and forty and one hundred and forty-one." If neglect to give such signals causes a collision the railroad with certain exceptions not here material is liable under § 232 for the damages. The nature of the signboards is described in § 140. They are only required when requested by the proper public authorities (§ 141). *Coakley* v. *Boston & Maine R.R.* 159 Mass. 32, 38.

The crossing where the present collision occurred was not a public way nor was there evidence that it was a travelled place where signboards were or should have been maintained. Sections 138 and 232 therefore did not apply and afforded the plaintiff no statutory right of action. The judge was in error in refusing to give the instructions numbered 1 and 2 requested by the defendant. In his charge he read a portion of § 138 to the jury but omitted to read the qualification of the definition of "traveled place" relating to signboards, and left it to the jury "to decide whether or not upon

the evidence from the auditor's report . . . the scene was a traveled place within the meaning of the statute." This was error and plainly reversible.

As the exceptions to the rulings and charge respecting the signals must be sustained and the case remanded to the Superior Court for a new trial, it is necessary to determine what if any portions of the auditor's report should be expunged. There is no contention that the defendant did not seasonably bring to the attention of the judge the parts of the report that it requested to have struck out. *Papetti* v. *Alicandro,* 317 Mass. 382, 390.

"An auditor is not limited in his report to a naked summary of the facts found . . . but may at his discretion include in it a narrative of the circumstances of the case, and a statement of the evidence given before him and of his reasons for his conclusions." *Fair* v. *Manhattan Ins. Co.* 112 Mass. 320, 329. *Sojka* v. *Dlugosz,* 293 Mass. 419, 422–423. The primary questions before the auditor were the due care of the plaintiff and the negligence of the defendant's employees. In discussing their respective conduct he stated what he found was not required on the part of the plaintiff to constitute due care and what was required on the part of the defendant.

The parts of his report which are quoted in passages numbered 2, 4 and 5 appear to be rulings of law and should have been expunged. As to passage numbered 3 the phrase "costing little in time or money" and the sentence "The conductor or another member of the train crew could have done this much easier and more efficiently than the operator of the truck who had no helper with him" refer to matters which are irrelevant as criteria of the conduct of the defendant's employees. They also should have been expunged. The balance of the passage could, in the opinion of a majority of the court, be allowed to stand.

*Exceptions sustained.*