Salinger, Kenneth W., J.
Todisco Towing towed Christopher Silva’s motor vehicle without Silva’s consent from a private parking lot in Salem, Massachusetts, to East Boston. The Todisco invoice says this was a “trespass” tow, which presumably means that the vehicle was towed at the request of the properly owner or manager because it was parked there illegally in violation of a posted notice. Cf. G.L.c. 266, §120D. Silva says Todisco charged him $169.00, including a $90.00 towing charge; a $42.00 mileage charge; a $35.00 storage charge; and a $2.00 fuel surcharge.
Silva alleges that the mileage charge and fuel surcharge were illegal because Todisco’s invoice or tow slip did not include information required by 220 C.M.R. §272.03, a regulation promulgated by the Department of Public Utilities (“DPU”) that establishes maximum rates for towing vehicles. Silva asserts claims for negligent misrepresentation, intentional fraud, unjust enrichment, violation of G.L.c. 93A, and declaratory judgment. He also seeks to represent a class consisting of all people whose motor vehicles were towed by Todisco and were charged a mileage fee or fuel surcharge when Todisco did not record the required information on the tow slip. Silva seeks monetary compensation for damages, punitive damages under c. 93A, equitable relief and declaratory relief on behalf of himself and the putative class members.
Todisco moves to dismiss this action on the grounds that Silva lacks standing, the DPU has primary jurisdiction, the statute authorizing a fine for violating the tow charge regulation bars any other relief, the cited regulation did not require Todisco to disclose any information, the claims for misrepresentation and fraud cannot be decided on a class-wide basis, and the claims for misrepresentation and fraud and under G.L.c. 93A are all preempted by federal law. The Court concludes that none of these arguments justifies dismissal. It will therefore DENY the motion to dismiss.
1. Standing
Todisco asserts that Silva lacks standing to bring this action because the allegations in the complaint establish that Todisco’s alleged wrongdoing did not cause Silva himself to suffer any injury. This argument is without merit.
Todisco correctly points out that the complaint alleges that Nathan Silva went to East Boston to retrieve the towed vehicle and paid the $169.00 total charge demanded by Todisco.
But the complaint also alleges that Nathan paid the towing charges imposed by Todisco on behalf of Christopher Silva, Nathan was acting as Christopher’s agent, Christopher is the one who actually paid the amount charged by Todisco, and therefore Christopher (not Nathan) is the one who suffered financial harm as a result of Todisco imposing towing charges that were not allowed under 220 C.M.R. §272.03.
Those allegations plausibly suggest that Todisco breached a legal duty owed to Silva by charging more for an involuntaiy tow than permitted by law, that Silva himself was injured by Todisco’s actions, and that Silva therefore has standing to bring this action. See G.L.c. 93A, §9(1) (any person injured by unfair or deceptive act or practice in trade or commerce may bring action in superior court for damages and equitable relief); Sullivan v. Chief Justice for Admin. & Mgmt. of the Trial Court, 448 Mass. 15, 22-23 (2007) (plaintiff has standing if allegations in complaint plausibly suggest that defendant owed legal duly to plaintiff, breached that duty, and plaintiff suffered injury as a result). Silva was not required to allege in more detail facts showing that Nathan was acting as Silva’s agent and paid Todisco on behalf of Silva. See, e.g., Lopez v. Commonwealth, 463 Mass. 696, 701 (2012) (“detailed factual allegations are not required”); Can *169 nonball Fund, Ltd. v. Dutchess Capital Mgmt., LLC, 84 Mass.App.Ct. 74, 93-95, rev. denied, 466 Mass. 1106 (2013) (plaintiffs standing is determined based on factual allegations in complaint, assuming them to be true).
2. Primary Jurisdiction
Todisco asserts that the DPU has primary jurisdiction over Silva’s claims, and that the Court should therefore dismiss this action. “The doctrine of primary jurisdiction arises in cases where a plaintiff, ‘in the absence of pending administrative proceedings, invokes the original jurisdiction of a court to decide the merits of a controversy’ that includes an issue within the special competence of an agency.” Fernandes v. Attleboro Hous. Auth., 470 Mass. 117, 121 (2014), quoting Murphy v. Administrator of the Div. of Personnel-Admin., 377 Mass. 217, 220 (1979). This doctrine “has particular applicability when ‘an action raises a question of the validity of an agency practice ... or when the issue in litigation involves ’’technical questions of fact uniquely within the expertise and experience of an agency." ’ “ Id. (ellipsis in original), quoting Murphy, supra, at 221, quoting in turn Nader v. Allegheny Airlines, Inc., 426 U.S. 290, 304 (1976).[1]
The DPU and the Superior Court share jurisdiction over claims that a towing company has violated the Department’s towing rate regulation. Since Silva’s vehicle was towed at the request of the owner or operator of the property where the vehicle had been parked, and without the consent of Silva or any authorized user of the vehicle, Todisco could not charge Silva any more than the maximum amount allowed for such involuntary tows under the applicable DPU regulations. See G.L.c. 266, §120D. All of Silva’s claims are based on his allegation that Todisco imposed towing charges for mileage and a fuel surcharge without providing information required under 220 C.M.R. §272.03. This regulation was adopted by the Department pursuant to its authority under G.L.c. 159B, §6B, to regulate the maximum charges that may be assessed for the involuntary towing of motor vehicles. Anyone affected by a violation of this regulation “may ñle” a complaint with the Department. G.L.c. 159B, §21. But this jurisdiction is not exclusive. See Papetti v. Alicandro, 317 Mass. 382, 385-90 (1944). The governing statute provides that the Superior Court retains “jurisdiction in equity to restrain any . . . violation” of regulations promulgated under this statute. See G.L.c. 159B, §21. In addition, individuals like Silva who contend they have been overcharged may file an action in Superior Court seeking repayment, just as carriers or towers who contend they are owed money under this regulation may file a civil action seeking payment. Cf. Papetti, supra, at 391-93.
Where a lawsuit involves a dispute over which a court and an administrative agency share jurisdiction, as in this case, the court generally has broad discretion as to whether to allow the lawsuit to proceed or instead dismiss or stay the action and refer issues to the agency under the doctrine of primary jurisdiction. See Blauvelt v. AFSCME Council 93, Local 1703, 74 Mass.App.Ct. 794, 801-02 (2009).
But Silva seeks damages and other relief under G.L.c. 93A, §9. That makes it inappropriate to dismiss or even to stay this case on the ground that the DPU has primary jurisdiction over this dispute.
By statute, individuals who are “entitled to bring an action” under G.L.c. 93A, §9, “shall not be required to initiate, pursue or exhaust” any administrative remedies before filing suit or obtaining relief under c. 93A in court. See G.L.c. 93A, §9, 91(6). This provision bars courts from dismissing or staying a §9 claim on the ground that the plaintiff should first seek relief in some other forum. Hannon v. Original Gunite Aquatech Pools, Inc., 385 Mass. 813, 826 (1982). It was added to c. 93A to reverse a contrary ruling by the Supreme Judicial Court. In 1972 the SJC held that an individual claiming he was overcharged by an insurer had to exhaust his administrative remedies before the Commissioner of Insurance before filing suit in Superior Court under c. 93A. See Gordon v. Hardware Mut. Cas. Co., 361 Mass. 582, 585-88 (1972). The Legislature responded to Gordon by enacting “St. 1973, c. 939, which amended G.L.c. 93A, §9, so as to obviate, except in specified cases, the requirement that administrative remedies be exhausted before relief can be granted under c. 93A.” Slaney v. Westwood Auto, Inc., 366 Mass. 688, 691 n.4 (1975).
Although courts retain some discretion to stay §9 claims to give the defendant the opportunity to initiate a proceeding before an administrative agency, by statute they may do so “only in certain limited circumstances.” Hannon, supra. Specifically, the Legislature has authorized such a stay only if (a) “there is a substantial likelihood” that the court case could result in an order “that would disrupt or be inconsistent with a regulatory scheme” that applies to the conduct at issue in the case, or (b) the regulatory agency “has a substantial interest in reviewing” the conduct at issue and also “has the power to provide substantially the relief sought[.]” G.L.c. 93A, §9, 91(7).
Neither of these statutorily-permissible reasons for staying claims applies in this case. Since Silva seeks an order compelling Todisco to comply with the regulatory scheme that governs involuntary tows, there is little chance that Silva will obtain an order requiring Todisco to do anything inconsistent with the regulatory scheme. And the DPU “lacks authority to order” Todisco to repay “a collected overcharge to customers” or to award the other relief sought by Silva under c. 93A. See Southbridge Water Supply Co. v. Dept. of Pub. Utils., 368 Mass. 300, 310 (1975).
Nor does it make any sense to stay Silva’s common-law claims. As the Court just noted, the DPU “is not authorized to order reimbursement of collected charges to customers.” See Lowell Gas Co. v. Attorney *170 Gen., 377 Mass. 37, 45 (1979). Furthermore, the question of whether Todisco is charging fees not allowed under the DPU’s towing charge regulations turns on questions of regulatory interpretation that Superior Court judges deal with regularly; it is not a highly technical issue that cannot be understood and fairly resolved without the Department’s specialized expertise. Under these circumstances, Silva should be allowed to press his claim and the putative class claims in court. “This is not a case in which the proper allocation of responsibilities between the courts and an administrative agency calls for judicial forbearance until agency action occurs.” See Columbia Chiropractic Group, Inc. v. Trust Ins. Co., 430 Mass. 60, 61-62 (1999) (Superior Court properly retained jurisdiction over counterclaims that provider violated G.L.c. 93A, §11, by overcharging for chiropractic services, rather than deferring to primary jurisdiction of Board of Registration of Chiropractors, where board had “no authority to award G.L.c. 93A damages” and overcharging claim was “not a complicated issue calling for agency expertise”).
3.Availability of Compensatory Remedy
Todisco notes that the DPU may impose a $100 fine to punish a violation of the towing charge regulation. See G.L.c. 159B, §21. Todisco then asserts that this fine is the exclusive remedy and that Silva may not seek compensatory damages or injunctive relief on behalf of himself or the putative class. This argument is without merit.
Nothing in §21 provides or even suggests that courts are barred from ordering repayment of overcharges, punitive damages and attorneys fees under c. 93A, or appropriate injunctive relief as a remedy for a violation of this regulation. Cf. J.&J. Enterprises, Inc. v. Martignetti, 369 Mass. 535, 539 (1976) (statute authorizing Alcoholic Beverages Control Commission to impose fine did not create exclusive remedy that would bar court from awarding damages, injunctive relief and other relief under c. 93A). To the contrary, and as noted above, the power of the DPU to enforce the towing charge regulations is not exclusive. See Papetti, 317 Mass, at 385-90; G.L.c. 159B, §21. The mere fact that the Legislature authorized imposition of a small fine does not, by itself, make that the exclusive remedy. See Labor Relations Comm’n v. Boston Teachers Union, Local 66, 374 Mass. 79, 92-93 (1977).
4.Legal Obligation to Disclose Mileage and Fuel Information
Todisco next asserts that Silva’s claim fails as a matter of law because nothing in the governing regulation required Todisco to disclose odometer and fuel surcharge information to the customer before imposing and collecting mileage and fuel charges for an involuntary tow. This argument is also without merit.
The regulation cited by Silva expressly required Todisco to provide customers like Silva with the information at issue. With respect to the mileage charge, the regulation provides that the charge is to be “based on round trip mileage from garage to return thereto,” that the towing company is to “establish the mileage from the service vehicle odometer,” and that it “must include the odometer readings on the tow slip.” See 220 C.M.R. §272.03, Note 3. With respect to the fuel surcharge, the regulation states that “the towing slip must record” certain specified information. Id., “Fuel Price Surcharge,” ¶6. By requiring that certain information be included on the tow slip, the regulation makes clear that this information must be disclosed and provided to the customer.
5.Amenability to Class Certification
Todisco argues that Silva should not be allowed to assert claims for intentional fraud or negligent misrepresentation on behalf of the putative class because the question of actual reliance cannot be decided on a class-wide basis. This argument is premature. Silva has not yet moved for class certification. The proper time to raise this argument is in response to a motion to certify the class, which Silva is not required to serve or file at this time. Cf. Massachusetts General Hospital v. Rate Setting Commission, 371 Mass. 705, 713 (1977) (unlike parallel federal rule, Mass.R.Civ.P. 23 does not require that class certification be decided at outset of case).
6.Federal Preemption
Todisco argues that Silva’s claims for intentional fraud, negligent misrepresentation, and violation of the Massachusetts Consumer Protection Act (G.L.c. 93A) are preempted by the Federal Aviation Administration Authorization Act, which bars states from regulating any “price, route, or service of any motor carrier . . . with respect to the transportation of property.” 49 U.S.C. §14501(c)(l).
This argument fails because it cannot be squared with a separate provision of this federal law. Congress provided that the preemption provision relied upon by Todisco “does not apply to the authority of a State or a political subdivision of a State to enact or enforce a law, regulation, or other provision relating to the regulation of tow truck operations performed without the prior consent or authorization of the owner or operator of the motor vehicle.” Id., §14501(c)(2)(C). Since Silva’s vehicle was towed without the prior consent or authorization of the vehicle owner or operator, the Commonwealth of Massachusetts is free to regulate the charges imposed by Todisco without running afoul of the FAAAA preemption provision. As a result none of Silva’s claims is preempted. See Tillison v. Gregoire, 424 F.3d 1093, 1100 (9th Cir. 2005) (state regulations that “impact the prices operators charge for non-consensual towing” are “saved from preemption by the exception in FAAAA which allows such regulation of prices”); State v. Transmasters Towing, 168 P.3d 60, 66 (Kansas Ct.App. 2007) (claims under Kansas Consumer Protection Act that charges for involuntary tows *171 were excessive not preempted by FAAAA, in part because they fall within preemption exception of §14501(c)(2)(C)).
7. Declaratory Relief
Finally, since Silva’s other claims survive the motion to dismiss, his claim seeking declaratory relief under G.L.c. 231A does as well. As explained above, the pleadings in this case make clear that there is an actual controversy between the parties regarding whether the towing charges imposed by Todisco were lawful, and Silva has standing to seek relief. Nothing more is needed to state a claim for declaratory relief. See, e.g., Galipault v. Wash Rock Investments, LLC, 65 Mass.App.Ct. 73, 83 (2005).
ORDER
Defendant’s motion to dismiss this action is DENIED. The Court will conduct a scheduling conference under Mass.R.Civ.P. 16 on February 21, 2017, at 2:00 p.m.

 The doctrines of exhaustion of administrative remedies and primary jurisdiction serve similar purposes but apply in different circumstances. See Liability Investigative Effort, Inc. v. Medical Malpractice Joint Underwriting Ass’n of Massachusetts, 409 Mass. 734, 750-51 (1991). ‘The doctrine of exhaustion of administrative remedies contemplates a situation where some administrative action has begun, but has not yet been completed; where there is no administrative proceeding under way, the exhaustion doctrine has no application. In contrast, primary jurisdiction situations arise in cases where a plaintiff, in the absence of pending administrative proceedings, invokes the original jurisdiction of a court to decide the merits of a controversy.” Id., quoting Murphy, 377 Mass. at 220.