LIABILITY INVESTIGATIVE FUND EFFORT, INC., & others vs.
MEDICAL MALPRACTICE JOINT UNDERWRITING
ASSOCIATION OF MASSACHUSETTS, & others
(and a consolidated case).

Hampden. December 3, 1990. - April 10, 1991.

Present: LIACOS, C.J., ABRAMS, NOLAN, O'CONNOR, & GREANEY, JJ.

*Insurance*, Rating, Commissioner of Insurance, Medical malpractice insurance. *Commissioner of Insurance. Administrative Law*, Judicial review, Exhaustion of remedies, Primary jurisdiction, Agency's authority. *Statute*, Construction. *Jurisdiction*, Primary jurisdiction, Administrative matter, Constitutional question, Consumer protection case, Judicial review of administrative action, Declaratory relief, Superior Court. *Consumer Protection Act*, Insurance, Pleading. *Practice, Civil*, Complaint, Consumer protection case, Declaratory proceeding.

The Supreme Judicial Court has original jurisdiction under G. L. c. 175A, § 5A, to review action of the Commissioner of Insurance establishing medical malpractice insurance rates, including deficit recoupment rates determined pursuant to St. 1975, c. 362, § 6. [740-742]

The Superior Court has jurisdiction, separate from the statutory process for judicial review of substantive agency decisions, to adjudicate claims challenging the legal and constitutional power of the Commissioner of Insurance to set medical malpractice insurance rates. [742-744]

Principles of exhaustion of remedies were not applicable to claims in the Superior Court on behalf of physicians challenging the facial constitutionality of regulations promulgated by the Commissioner of Insurance governing the establishment of certain medical malpractice insurance rates; nor to the physicians' claims challenging the constitutionality of the regulations as applied to them, to the extent that the judicial determination of constitutionality did not depend on preliminary factual determinations within the commissioner's area of expert knowledge; nor to any of the physicians' additional common law and statutory claims against the commissioner, the Commonwealth, and the Medical Malpractice Joint Underwriting Association of Massachusetts, as to which the commissioner did not have jurisdiction to grant relief. [744-747]

This court vacated orders of Superior Court judges dismissing, in their entirety, physicians' claims challenging certain medical malpractice insurance rate regulations promulgated by the Commissioner of Insur-

ance; on remand, the trial judge was to consider each claim individually and dismiss only those incapable of adjudication without application of the commissioner's specialized knowledge or those dependent upon the commissioner's determinations made during ratemaking proceedings. [747-748]

A physician's claim against the Medical Malpractice Joint Underwriting Association of Massachusetts, alleging that the association had violated G. L. c. 93A, fell within the primary jurisdiction of the Commissioner of Insurance under G. L. c. 176D, § 6; in the circumstances, proceedings in the Superior Court should not have been dismissed, but should be stayed until such time as the claim has been considered by the commissioner. [748-751]

In an action by a physician, a count alleging that, as the result of certain medical malpractice insurance rate-setting determinations of the Medical Malpractice Joint Underwriting Association of Massachusetts, "he will be cast into penury or unable to meet his obligations as they become due and will no longer be able to practice his profession," was sufficient to set forth a claim of unconstitutional taking, and should not have been dismissed for failure to state a claim on which relief can be granted. [751-752]

CIVIL ACTIONS commenced in the Superior Court Department on May 3, 1989, and June 2, 1989, respectively.

In the second case, a motion to dismiss was heard by *Raymond R. Cross*, J. The cases were then consolidated for trial and were heard by *John F. Moriarty*, J., on further motions to dismiss.

The Supreme Judicial Court granted a request for direct appellate review as to the first case and on its own initiative transferred the second case from the Appeals Court.

*Henry Mark Holzer* of New York (*Rebecca J. Wilson & Cheri L. Crow* with him) for Liability Investigative Fund Effort, Inc., & others.

*Richard M. Howland* for Robert S. Slocum.

*Richard M. Brunell*, Assistant Attorney General, for the Commonwealth & another.

*Michael J. Lacek* (*Geoffrey E. Hobart* with him) for Medical Malpractice Joint Underwriting Association of Massachusetts.

736 409 Mass. 734

Liability Investigative Fund Effort *v.* Medical Malpractice Joint Underwriting Ass'n.

ABRAMS, J. This case raises the question whether Massachusetts physicians who have been affected by certain malpractice insurance rate regulations promulgated by the Commissioner of Insurance (commissioner) may maintain an action in the Superior Court for declaratory and equitable relief. The judge in the Superior Court dismissed the plaintiffs' complaints, holding that exclusive jurisdiction over their claims lies with this court pursuant to G. L. c. 175A, § 5A (1988 ed.). We hold that the Superior Court judge should not have dismissed the complaints in their entirety, and remand for a determination of which claims should first have been presented through the § 5A procedure. We further hold that the judge should have stayed the proceedings with respect to the plaintiff Dr. Robert S. Slocum's G. L. c. 93A claim because the commissioner has primary jurisdiction.

The proceeding before the Superior Court was a consolidation of two actions. The plaintiffs in the first action are the Liability Investigative Fund Effort, Inc. (LIFE), a Massachusetts corporation founded and managed by Massachusetts physicians, and seven individual physicians. The physicians seek to maintain a class action on behalf of themselves and all persons who have been insured by the Medical Malpractice Joint Underwriting Association of Massachusetts (JUA) at any time from 1975 to the present and who are or may be obligated to the JUA for retroactive premium assessments. The defendants are the Commonwealth, the commissioner, and the JUA. In the second action, Dr. Robert S. Slocum is suing the JUA.

In 1975, the Legislature enacted St. 1975, c. 362, in order to guarantee the continued availability of medical malpractice insurance in the Commonwealth. The act inserted a new § 5A into G. L. c. 175A, authorizing the commissioner to "fix and establish fair and reasonable classification of risks and adequate, just, reasonable and nondiscriminatory premium charges on claims made and occurrence basis" to be charged by medical malpractice insurance writers. Section 5A provides that "[a]ny person or company aggrieved by any action, order, finding or decision of the commissioner under

409 Mass. 734 737

Liability Investigative Fund Effort *v.* Medical Malpractice Joint Underwriting Ass'n.

this section may, within twenty days from the filing of such memorandum thereof in his office, file a complaint in the supreme judicial court for the county of Suffolk for a review of such action, order, finding or decision."

Section 6 of the act created the JUA "to provide medical malpractice insurance on a self-supporting basis." St. 1975, c. 362, § 6, 2d par. The JUA is an association of all insurers authorized to write and engaged in writing personal injury liability insurance. It has the power to issue insurance policies, in accordance with a plan of operation promulgated by the commissioner, to licensed physicians and hospitals who are unable to obtain such insurance elsewhere. "The rates, rating plans, rating rules, rating classifications, territories and policy forms applicable to the insurance written by the [JUA] . . . shall be subject to" G. L. c. 175A, § 5A, the ratemaking section discussed above. St. 1975, c. 362, § 6, 6th par. Section 6 further provides that "[a]ny deficit sustained by the association in any one year shall be recouped, pursuant to the plan of operation and the rating plan then in effect by an assessment upon the policyholders, or a rate increase applicable prospectively, or both." St. 1975, c. 362, § 6, 7th par. In 1980, the Legislature amended this provision so that the power to recoup deficits may be exercised only by a prospective rate increase, not by an assessment. See St. 1980, c. 333.

Finally, § 6 permits an "appeal for review to the commissioner within thirty days after any ruling, action, or decision by or on behalf of the association, with respect to those items the plan of operation defines as appealable matters." The commissioner's decision is in turn appealable to the Superior Court. See St. 1975, c. 362, § 6, 11th & 12th pars. In addition, "[a]ny person aggrieved by any other rule or regulation of the commissioner made pursuant to this section" may appeal to the Superior Court. *Id.* at 12th par.

On April 1, 1983, the JUA recommended to the commissioner a 162.7% increase in malpractice insurance premiums

for the 1983 rate year.[1] The commissioner did not issue a decision on the rate increase until May 18, 1984, when he allowed only a 42% increase. The JUA appealed the decision to this court pursuant to G. L. c. 175A, § 5A. We determined that the commissioner misinterpreted the applicable statutes and therefore we reversed the decision and remanded these matters for further ratemaking proceedings. See *Medical Malpractice Joint Underwriting Ass'n of Mass.* v. *Commissioner of Ins.,* 395 Mass. 43 (1985). On December 24, 1985, the Legislature froze premium rates for policies issued on or after July 1, 1984, at the level contained in the commissioner's overturned decision of May 18, 1984. The freeze was to apply until May 1, 1986. See St. 1985, c. 671, § 1. It later was extended to July 1, 1986. See St. 1986, c. 37.

Meanwhile on June 6, 1986, the commissioner issued a new decision regarding the 1983 rate, raising it 93.9% above the previous year rate, rather than the 42% rise overturned in 1985. He also raised the rate for the 1984 rate year 10.9% above the 1983 rate. No appeal was taken from that decision.

Later that month, the Legislature enacted St. 1986, c. 351, providing a means for the JUA to recover lost premiums attributable to the legislative freeze. The statute established a "total deferred premium liability," which is a sum representing the difference between the rates set by the commissioner pursuant to c. 175A, § 5A, for the 1983-1985 rate years and the premiums actually paid for the period pursuant to the freeze. The statute provided for recovery of the total deferred premium liability over a five-year period from July 1, 1987, through June 30, 1992, by means of a "separate rate" added to the normal rate for policies issued during that period. The separate rates were to be assessed and recovered in the same manner as rates established pursuant to c. 175A, § 5A. See

---

[1]The 1983 rate year extended from July 1, 1983, through June 30, 1984. In general, a "rate year" as used in this opinion refers to the July 1-June 30 period.

409 Mass. 734                                    739

Liability Investigative Fund Effort *v.* Medical Malpractice Joint Underwriting Ass'n.

St. 1986, c. 351, § 38. The statute did not refer to the deficit recoupment provision of St. 1975, c. 362, § 6, 7th par., discussed above.

On April 2, 1987, the JUA requested recoupment of a $140,000,000 deficit incurred between the years 1975 and 1982. A separate administrative proceeding on the request was instituted, and interim rulings were issued specifying which persons or classes of persons would be liable for the recoupment. On appeal, we affirmed the interim rulings. See *Risk Management Found. of Harvard Medical Insts.* v. *Commissioner of Ins.*, 407 Mass. 498 (1990).

On May 3, 1989, the LIFE plaintiffs filed this twenty-three count class action complaint in the Superior Court for the county of Hampden, alleging a series of State and Federal constitutional violations. They also assert contractual ·claims against the defendants and allege a violation of c. 175A, § 5A.

On June 2, 1989, Slocum filed a complaint in the Superior Court for the county of Hampshire, counts II-XVII of which incorporate nearly verbatim many of the constitutional and contractual claims asserted by the LIFE plaintiffs. In addition, count I alleges a violation of G. L. c. 93A, and count XVIII claims that the JUA's actions "will result in the functional exhaustion of the [p]laintiff's financial reserves" and render him unable to practice his profession. The JUA moved to dismiss. It argued that the commissioner has primary jurisdiction over count I, that counts II-XVII should be dismissed under Mass. R. Civ. P. 12 (b) (9), 365 Mass. 754 (1974), because they are verbatim copies of the claims raised in the pending LIFE action, and that count XVIII failed to state a claim on which relief can be granted. The judge allowed the motion with regard to counts I and XVIII. He further ordered that counts II-XVII be transferred and consolidated with the LIFE case in the Superior Court in Hampden County. The judge in the Hampden case then granted a motion to dismiss by the defendants for lack of subject matter jurisdiction. The plaintiffs in both cases appeal.

*The Hampden court dismissal.* The Hampden judge decided that the plaintiffs' claims essentially were attacks on the ratemaking process. As such, he concluded, they were subject to the review provisions of G. L. c. 175A, § 5A, and an appeal from the commissioner's decision could have been made only to this court. The plaintiffs, on the other hand, contend that they have mounted legal and constitutional challenges to the JUA's power to recoup deficits, rather than challenges to the amounts of the rates set, so that appeal to this court under § 5A is not the exclusive avenue of relief.

Section 5A empowers the commissioner to set malpractice rates. The review provision places original jurisdiction in this court to hear appeals of "any action, order, finding or decision of the commissioner *under this section*" (emphasis added). G. L. c. 175A, § 5A. This court therefore has jurisdiction to review the ratemaking process. The judge correctly noted that the review power is "all-encompassing," as we have jurisdiction to "modify, amend, annul, reverse or affirm" the commissioner's action, we may "review all questions of fact and law involved therein and may make any appropriate judgment." *Id.* Yet the comprehensiveness of the power granted us by the Legislature to review ratemaking decisions does not affect the breadth of the jurisdiction granted. Section 5A review in this court is review only of those actions taken by the commissioner under § 5A.

In addition, the review provision of § 5A is incorporated by reference into other areas of the medical malpractice insurance laws. Statute 1975, c. 362, § 6, subjects the JUA's "rates, rating plans, rating rules, rating classifications, territories, and policy forms" to § 5A. Because § 6 as amended allows the JUA to recoup deficits through prospectively applied rate increases, judicial review of the amounts of those rate increases may likewise be conducted pursuant to § 5A. Furthermore, the 1986 statute authorizing recovery of the "total deferred premium liability" through the imposition of a "separate rate" over a five-year period provides that the separate rate is to be assessed and recovered pursuant to § 5A. See St. 1986, c. 351. Therefore, this court or the Su-

preme Judicial Court for Suffolk County (single justice) has original jurisdiction to review the process of establishing separate rates.

The plaintiffs point out that the Legislature placed original jurisdiction in the Superior Court to review appeals to the commissioner of any ruling, action, or decision of the JUA "with respect to those items the plan of operation defines as appealable matters."[2] St. 1975, c. 362, § 6, 11th par. They also note that the Superior Court has jurisdiction to review "any other rule or regulation of the commissioner pursuant to this section." The section in which that provision is contained — § 6 of St. 1975, c. 362 — is also the section which authorizes the JUA to recoup deficits. According to the plaintiffs, that review provision does not specifically exclude regulations pertaining to deficit recoupment. Because they assert that all of the retroactive rates assessed or to be assessed are de facto exercises of the deficit recoupment power under § 6, they conclude that the Superior Court, under the review provision of § 6, has jurisdiction to hear their claims.[3] The language of the statute, they assert, compels the conclusion that their construction of the statute is correct.

We agree with the plaintiffs that the literal language of § 6 appears to be a broad grant of jurisdiction to the Superior Court. We do not agree that the result urged by the plaintiffs is compelled by the language of the statute. "When the meaning of any particular section or clause of a statute is questioned, it is proper, no doubt, to look into the other parts of the statute; otherwise the different sections of the same

[2]According to the complaint, there is currently no plan of operation in effect. The JUA originally was intended to be a temporary association, in existence only through December 31, 1977. Therefore, the commissioner's original plan of operation was scheduled to expire on that date. Although the Legislature has extended the JUA through July 1, 1992, the plan of operation has not been similarly extended.

[3]With respect to the 1983-1985 total deferred premium liability, recovery of that amount was specifically authorized by the Legislature in a different statute, St. 1986, c. 351, § 38. Therefore, § 5A governs the review of those rates, regardless of whether they have the same effect as deficit recoupment.

statute might be so construed as to be repugnant, and the intention of the legislature might be defeated. And if, upon examination, the general meaning and object of the statute should be found inconsistent with the literal import of any particular clause or section, such clause or section must, if possible, be construed according to the spirit of the act." *Holbrook* v. *Holbrook*, 1 Pick. 248, 250 (1822). Although the literal language of the statute is important, "[t]he intention of the General Court in enacting any statute must be ascertained, not alone from the literal meaning of its words, but from a view of the whole system of which it is but a part, and in the light of the common law and previous statutes." *Pereira* v. *New England LNG Co.*, 364 Mass. 109, 115 (1973), quoting *Armburg* v. *Boston & Me. R.R.*, 276 Mass. 418, 426 (1931). From a review of the insurance statutes as a whole, it is clear that the Legislature never has permitted a challenge to insurance rate-setting to be heard in the Superior Court, but always has placed such review in this court or in the Supreme Judicial Court for Suffolk County (single justice session). See, e.g., G. L. c. 152, § 53A (workmen's compensation); c. 174A, § 18 (fire, marine, and inland marine insurance); c. 175, § 113B (compulsory motor vehicle liability insurance); c. 175A, § 19 (casualty insurance). We think that the clause permitting appeals from "any other rule or regulation of the commissioner pursuant to this section" must be read as relating to those rules and regulations that do not pertain to ratemaking. This interpretation is supported by the use of the word "other": because review of the amount of deficit recoupment already is provided for by reference to § 5A, the residual review in the Superior Court of "other" rules and regulations does not include deficit recoupment review. We conclude that, under § 6, ratemaking challenges, including challenges to deficit recoupment rates, cannot be heard by the Superior Court.

The Superior Court, however, has jurisdiction to hear constitutional challenges to statutes. Indeed, it is doubtful that the commissioner could consider a challenge to the constitu-

409 Mass. 734                                        743

Liability Investigative Fund Effort *v*. Medical Malpractice Joint Underwriting Ass'n.

tionality of a statute, even if it were brought before him.[4] A challenge to the enabling statute is not a challenge to the commissioner's actions; it is a challenge to the Legislature's actions. See *Johnson* v. *Robison*, 415 U.S. 361, 367 (1974) (constitutional challenge to statutory classification denying plaintiff veteran's benefits is not barred by provision prohibiting judicial review of decisions of Veterans' Affairs Administrator because challenge is to a decision of Congress).

Where the commissioner "is acting under a statute that is violative of the Federal or State Constitution, or where [he] is dealing with a matter that is clearly beyond the scope of [his] authority, then one may challenge [his] jurisdiction by invoking the aid of the courts and need not wait until the [commissioner] has made a final order." *St. Luke's Hosp.* v. *Labor Relations Comm'n*, 320 Mass. 467, 470 (1946). Review of an agency's legal or constitutional power to act is not governed exclusively by the limited appeal processes that a statute might provide for review of substantive agency decisions, especially where, as here, a party has only twenty days to bring such action.[5] See *Samel* v. *Pittsfield Licensing Bd.*,

---

[4]The judge notes in his ruling that, in the ongoing proceedings regarding deficit recoupment for the 1975-1982 period, the commissioner has refused to hear the parties' constitutional claims. As the United States Supreme Court has noted, "[a]djudication of the constitutionality of [legislative] enactments has generally been thought beyond the jurisdiction of administrative agencies." *Johnson* v. *Robison*, 415 U.S. 361, 368 (1974), quoting *Oestereich* v. *Selective Serv. Bd.*, 393 U.S. 233, 242 (1968) (Harlan, J., concurring in result).

[5]The defendants maintain that § 5A is the exclusive means for these challenges, relying on *Attorney Gen.* v. *Commissioner of Ins.*, 403 Mass. 370 (1988), and *Allstate Ins. Co.* v. *Sabbagh*, 603 F.2d 228 (1st Cir. 1979). These cases do not stand for the broad proposition for which the defendants assert them. In the first case, we said that "a direct appeal was the only way to challenge or correct any legal error committed by the commissioner in setting the rates." *Attorney Gen., supra* at 375. The statement, however, was in the context of considering whether the commissioner was permitted to take a so-called "second look" at the rates set for prior years to compensate for shortfalls. We did not purport to consider whether a challenge to the power of the commissioner to revise rates could be attacked collaterally as well as on direct review. *Allstate Ins. Co.* was purely a ratemaking challenge. The Federal court abstained from exercising jurisdiction because in its view insurance rate-setting is an area of "in-

377 Mass. 908 (1978); *Westland Hous. Corp. v. Commissioner of Ins.*, 352 Mass. 374, 381-382 (1967); *Massachusetts Gen. Hosp. v. Cambridge*, 347 Mass. 519, 522 (1964); *Lapierre v. Maryland Casualty Co.*, 14 Mass. App. Ct. 248, 252 (1982). See also *Califano v. Sanders*, 430 U.S. 99, 109 (1977) ("access to the courts is essential to the decision of [constitutional] questions").

We turn to the JUA's argument that the plaintiffs were required to intervene and present their claims in the first instance in the ratemaking proceedings. Although such intervention is required when a party challenges the substance of a ratemaking decision, see *Springfield Hosp. v. Commissioner of Pub. Welfare*, 350 Mass. 704, 710 (1966); *Massachusetts Gen. Hosp. v. Cambridge, supra*, it is not an absolute prerequisite to challenges to the power of the commissioner to act.[6] If a party challenges the facial constitutionality of statutes conferring authority on the commissioner and the JUA, he or she need not first present the claims in a ratemaking proceeding pursuant to § 5A. See *Hartford Accident & Indem. Co. v. Commissioner of Ins.*, 407 Mass. 23, 25 (1990) (facial constitutionality of enabling statute for automobile reinsurance plan upheld by a single justice of Supreme Judicial Court pursuant to court's general equity jurisdiction); *St. Luke's Hosp., supra*; 2 F. Cooper, State Administrative Law 579 (1965) (noting that several States have held that a failure to exhaust administrative

---

tensely local interest." *Allstate Ins. Co., supra* at 233. In the course of the discussion, the court noted that the Supreme Judicial Court has exclusive jurisdiction to review substantive rate determinations under § 5A. That jurisdiction, as we have noted, is not exclusive as to challenges to the commissioner's power to act.

[6]In *Hartford Accident & Indem. Co. v. Commissioner of Ins.*, 407 Mass. 23 (1990), we permitted an action for declaratory, injunctive, and restitutionary relief challenging the constitutionality of a rule promulgated by the commissioner even though the plaintiffs had not participated in the proceedings in which the rule was adopted. Because the constitutional challenges were not questions committed to the commissioner's discretion, the plaintiffs were not required to present their claims to him before seeking relief in Superior Court.

409 Mass. 734                                      745

Liability Investigative Fund Effort *v.* Medical Malpractice Joint Underwriting Ass'n.

remedies is excused where the challenge is to the constitutionality of the enabling legislation because the agency is not empowered to decide the constitutional issue). Cf. *Aetna Casualty & Sur. Co.* v. *Commissioner of Ins.*, 358 Mass. 272 (1970) (declaratory judgment action challenging constitutionality of legislation requiring fifteen per cent reduction in automobile insurance). In addition, a party may challenge the "as-applied" constitutionality of a statute or regulation in Superior Court where the constitutionality does not depend on preliminary factual determinations within the agency's area of expertise. See *Samel* v. *Pittsfield Licensing Bd.*, *supra* at 908; *Gallagher* v. *Metropolitan Dist. Comm'n*, 371 Mass. 691, 699 (1977). Cf. *Samuels Pharmacy, Inc.* v. *Board of Registration in Pharmacy*, 390 Mass. 583 (1983) (no declaratory relief where board has not determined facts necessary to resolution of constitutional issue); *East Chop Tennis Club* v. *Massachusetts Comm'n Against Discrimination*, 364 Mass. 444, 452 (1973). A party also may bring common law contract claims or claims based on G. L. c. 93A in a judicial rather than administrative forum if the agency involved does not have jurisdiction to hear those claims. See *Warner Ins. Co.* v. *Commissioner of Ins.*, 406 Mass. 354, 360 (1990); *Papetti* v. *Alicandro*, 317 Mass. 382, 385-390 (1944). Cf. *Lapierre* v. *Maryland Casualty Co.*, 14 Mass. App. Ct. 248, 250 (1982) (refusing to apply the doctrine of primary jurisdiction for resolution of contractual claims that do not require application of the commissioner's expertise).

The defendants rely on *Nelson* v. *Blue Shield of Mass., Inc.*, 377 Mass. 746 (1979). In that case, we required the exhaustion of administrative remedies with the commissioner where the plaintiffs attacked the commissioner's approval of a physician reimbursement agreement between Blue Cross and the plaintiffs. That challenge, however, was to the substance of the commissioner's decision, not to his power to act. The *Nelson* plaintiffs also asserted common law contract and fraud claims. We likewise required exhaustion of these claims because they amounted to "an attack on the entire system by which Blue Shield compensates participating phy-

sicians." *Id.* at 753. Moreover, we noted that a "complete administrative remedy" was provided statutorily whereby *"[a]ny dispute or controversy* arising between a medical service corporation [Blue Cross] and any participating physician . . . may within thirty days after any such dispute or controversy arises be submitted by any person aggrieved : . ." (emphasis added). G. L. c. 176B, § 12. The ability to submit "any dispute or controversy" to the commissioner is much broader than the appeal provided by § 5A of "any action, order, finding, or decision of the Commissioner" relating to the rate-setting process. We noted in *Nelson* that, "*if* the exercise of the Commissioner's regulatory power may afford the plaintiffs some relief, or may affect the scope and character of judicial relief, exhaustion of the possibilities of action by the Commissioner should ordinarily precede independent action in the courts" (emphasis added). *Id.* at 752. Although Slocum and the LIFE plaintiffs posit an attack on the medical malpractice insurance system equally as comprehensive as that presented in *Nelson*, they also assert that they would not be able to obtain relief for their contractual claims before the commissioner.[7] *Nelson*, therefore, does not control this case.

The defendants argue that the plaintiffs' challenge to the ongoing deficit recoupment proceedings for the 1975-1982 rate years is premature. In general, substantive challenges may not be brought until the hearings are completed and the commissioner has issued a final decision. See *Massachusetts Medical Soc'y v. Commissioner of Ins.*, 402 Mass. 44, 47-48 (1988) (no challenge permitted to the commissioner's approval of a design for an experience rating plan until a finalized plan is presented for implementation); *Assuncao's Case*, 372 Mass. 6 (1977). Where the challenge is to the enabling statute providing the commissioner with authority to recoup deficits, however, exhaustion may not be required, as dis-

---

[7]We also ordered dismissal of the G. L. c. 93A claim in *Nelson* because the plaintiffs had not exhausted their administrative remedy under G. L. c. 176D. We discuss this holding further in our consideration of Slocum's c. 93A claim, *infra.*

cussed above. See also *New Bedford* v. *New Bedford, Woods Hole, Martha's Vineyard & Nantucket S.S. Auth.*, 329 Mass. 243, 247 (1952) (declaratory judgment action challenging agency's jurisdiction may be brought before final decision rendered where agency already has asserted jurisdiction).

Ordinarily, an agency must be given an opportunity to determine its own jurisdiction before an action for declaratory relief may be brought. See *Gill* v. *Board of Registration of Psychologists*, 399 Mass. 724 (1987); *East Chop Tennis Club, supra* at 452. Where, however, the validity of that jurisdiction depends not on an interpretation of a jurisdictional statute, but on the constitutionality of that statute, exhaustion may not be required. See *Gurry* v. *Board of Pub. Accountancy*, 394 Mass. 118, 126 (1985). Exhaustion is particularly unnecessary where no specialized fact finding is needed, see *Samel* v. *Pittsfield Licensing Bd., supra* at 908, and where the agency does not have the authority to decide the constitutional question posed, see *Hartford Accident & Indem. Co.* v. *Commissioner of Ins.*, 407 Mass. 23 (1990). In such cases, resort to administrative remedies would be futile, see *Ciszewski* v. *Industrial Accident Bd.*, 367 Mass. 135, 140-141 (1975), and "would also be a commitment of administrative resources unsupported by any administrative or judicial interest." *Weinberger* v. *Salfi*, 422 U.S. 749, 766 (1975).

The judge considered the plaintiffs' claims en masse and determined that they were in essence ratemaking challenges. The parties have not argued the validity of each individual count to this court. The case therefore must be remanded and each count must be examined individually. Those which do not challenge the substance of a ratemaking decision or which do not otherwise require exhaustion under the principles discussed above may be adjudicated in the Superior Court.

748                                                    409 Mass. 734

Liability Investigative Fund Effort *v.* Medical Malpractice Joint Underwriting Ass'n.

On remand, the judge should not dismiss those claims attacking the facial[8] or as-applied constitutionality of the statute that do not require the commissioner's expertise to resolve. Likewise, where the commissioner does not have the power to grant relief on the common law contractual claims, and those claims can be adjudicated without application of the commissioner's specialized knowledge, the judge should retain jurisdiction. On the other hand, the judge should dismiss those claims that are dependent on the substance of the commissioner's determinations during the ratemaking proceedings.[9] See *Springfield Hosp.* v. *Commissioner of Pub. Welfare*, 350 Mass. 704, 710-711 (1966).

*The Hampshire court dismissal.* In addition to many of the claims raised by the LIFE plaintiffs, Slocum asserts two additional claims. One alleges a violation by the JUA of the consumer protection law, G. L. c. 93A, and the other protests a series of erratic increases in premiums and fees that allegedly will cast him into penury.[10] The claims were dismissed

---

[8]We recently rejected challenges to the rationality of the deficit recoupment power and to the constitutionality of its delegation of power. See *Risk Management Found. of Harvard Medical Insts.* v. *Commissioner of Ins.*, 407 Mass. 498, 505-507 (1990). The plaintiffs concede that their claims raising similar challenges are moot.

[9]For example, one of the counts attacks the amount of the rates set as substantively not in accordance with the requisites of § 5A. On the other hand, the plaintiffs' claim that the JUA may not act because there is no plan of operation, see note 2, *supra*, is a legal issue for the Superior Court.

[10]Slocum's complaint sets forth an account of his interactions with the JUA. He asserts that in 1978 he obtained a "claims made" insurance policy from the JUA (the only available source of medical malpractice insurance). In choosing such a policy, he asserts that he relied on a representation by the JUA that the choice would save him $4,695 over six years, and that the "reporting statement" fee to cover after-arising claims that would be due upon termination of the policy would amount to $3,066. When in 1983 he decided to switch to an "occurrence policy," the reporting endorsement had risen to $9,987, an increase about which he was never informed. After he began paying off the reporting endorsement, and no longer had the option of remaining on a claims made policy, the endorsement again rose to $35,203. In addition, Slocum alleges that the JUA's billing practices have been erratic and unpredictable. For example, for the 1983 rate year, he originally was charged $2,474 in December, 1983. After a series of additional premiums billed or to be billed through 1991

409 Mass. 734                    749

Liability Investigative Fund Effort *v.* Medical Malpractice Joint Underwriting Ass'n.

by the Hampshire court judge prior to consolidation with the LIFE plaintiffs' action.[11] The judge did not issue a written opinion explaining his reasons for granting the dismissal on these two counts. The JUA's motion to dismiss, however, argued that count I (the unfair and deceptive acts and practices claim) should be dismissed because primary jurisdiction lies with the commissioner, and that count XVIII should be dismissed for failure to state a claim.

With regard to count I, Slocum contends that he should not be relegated to administrative remedies because, according to his brief, there is no avenue for administrative appeal of this claim. He acknowledges that St. 1975, c. 362, § 6, 11th par., allows any insured person to appeal to the commissioner "any ruling, action, or decision by or on behalf of the [JUA], with respect to those items the plan of operation defines as appealable matters." He claims, however, that because no plan of operation is currently in effect, see note 2, *supra*, this avenue of appeal is foreclosed.

We need not decide this question, however, because another route is available for the commissioner to consider this claim. General Laws c. 176D, § 6, provides the commissioner with "the power to examine and investigate into the affairs of every person engaged in the business of insurance in this commonwealth in order to determine whether such person has been or is engaged in any unfair method of competition

---

(including some interim errors which were refunded), Slocum eventually owed $13,278 for the 1983 rate year plus an additional $38,201 to cover combined deficiencies in the 1983-1985 rate years.

[11]The JUA contends that the dismissal of those two counts is not properly before the court because Slocum failed to file an appeal within thirty days of the Hampshire court's decision. The docket shows, however, that Slocum moved for entry of a final judgment in the Hampshire court after the dismissal, but the motion was denied. Because he could not have appealed from a judgment that was not final, see G. L. c. 231, § 113, his failure to appeal the Hampshire court dismissal does not defeat this appeal. Likewise, Slocum acted properly in ultimately filing his appeal with the Hampden court rather than the court in Hampshire county. Once the cases were consolidated, Slocum was not required to re-sever his case on appeal. On remand, Slocum's case may be severed so that he may pursue his individual claims.

or in any unfair or deceptive act or practice." See *Nelson* v. *Blue Shield of Mass., Inc.*, 377 Mass. 746, 754 (1979); *SDK Medical Computer Servs. Corp.* v. *Professional Operating Management Group, Inc.*, 371 Mass. 117, 126 (1976). Slocum, therefore, may be "required to seek the aid of the Commissioner under c. 176D before filing suit under c. 93A." *Nelson, supra* at 754.

Nevertheless, the existence of the c. 176D remedy does not strip the court of jurisdiction over the c. 93A claim. See *Nelson, supra* at 754; *Dodd* v. *Commercial Union Ins. Co.*, 373 Mass. 72, 75-79 (1977). Because the commissioner's and the court's jurisdiction over the substance of count I overlap, and because no proceedings have been initiated before the commissioner to consider Slocum's claim,[12] the question of primary jurisdiction arises.

The doctrine of primary jurisdiction has a purpose similar to that of the exhaustion doctrine. Both are attempts to "promot[e] proper relationships between the courts and administrative agencies charged with particular regulatory duties" by determining when and sometimes whether a court should assert jurisdiction over particular claims. *Murphy* v. *Administrator of the Div. of Personnel Admin.*, 377 Mass. 217, 221 (1979), quoting *Nader* v. *Allegheny Airlines, Inc.*, 426 U.S. 290, 303 (1976). "The doctrine of exhaustion of administrative remedies contemplates a situation where some administrative action has begun, but has not yet been completed; where there is no administrative proceeding under way, the exhaustion doctrine has no application. In contrast, primary jurisdiction situations arise in cases where a plaintiff, in the absence of pending administrative proceedings, invokes the original jurisdiction of a court to decide the merits

---

[12]Slocum argues that any attempt to present his claim to the commissioner would be futile because the JUA has responded negatively to his demand letter under c. 93A. He does not appear to have issued a demand letter to the commissioner, however, who is the one who has authority to initiate the c. 176D investigation. We cannot agree, therefore, that he adequately has explored this avenue of relief. See *Nelson* v. *Blue Shield of Mass., Inc.*, 377 Mass. 746, 754 (1979).

of a controversy." *Id.* at 220. "[P]rimary jurisdiction requires prior resort to an administrative agency 'where that procedure would secure "[u]niformity and consistency in the regulation of business entrusted to a particular agency," ' or 'when the issue involves technical questions of fact uniquely within the expertise and experience of an agency.' " *Casey* v. *Massachusetts Elec. Co.*, 392 Mass. 876, 879 (1984), quoting *Nader* v. *Allegheny Airlines, Inc.*, *supra* at 303-304. In addition, "the doctrine is particularly applicable when an action raises a question of the validity of an agency practice." *Murphy*, *supra* at 221.

We agree with the defendants that the commissioner has primary jurisdiction over this claim. Slocum's claim raises issues that will affect virtually every holder of medical malpractice insurance policies in the Commonwealth. Uniformity is obviously a significant concern. Moreover, the case will draw on the commissioner's technical expertise in determining the conformance of premiums charged to Slocum with the rates set by the commissioner. Because the claim raises a considerable question about the validity of the JUA's practices — practices over which the commissioner has authority — the commissioner should have an opportunity to consider the claim prior to a judicial hearing.

The judge erred, however, in dismissing the claim altogether. "[W]here damages for past conduct are sought which cannot be awarded by the agency, the proper course may be to stay the action rather than dismiss it." *Lowell Gas Co.* v. *Attorney Gen.*, 377 Mass. 37, 45-46 (1979). See *J. & J. Enters., Inc.* v. *Martignetti*, 369 Mass. 535, 540 (1976). In this case, the plaintiff Slocum asserts a claim for past damages under c. 93A, but under c. 176D the commissioner has the power to issue only prospective relief. We therefore reverse the dismissal of this count and remand the case to the Superior Court with instructions to stay the action.

The JUA argues that the dismissal of count XVIII should be upheld because it fails to state a claim on which relief can be granted. Count XVIII asserts: "The [d]efendant has again demanded that the [p]laintiff pay enormous increased

premium charges as set forth *supra*, which will result in the functional exhaustion of [the p]laintiff's financial reserves and income such that he will be cast into penury or be unable to meet his obligations as they become due and will no longer be able to practice his profession." We think the allegations are sufficient to set forth a claim of an as-applied unconstitutional taking. "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Nader* v. *Citron*, 372 Mass. 96, 98 (1977), quoting *Conley* v. *Gibson*, 355 U.S. 41, 45-46 (1957). The claim should not have been dismissed for insufficiency of the allegations. On remand, however, the judge may want to stay the proceedings to await the outcome of either the ongoing deficit recoupment proceedings or Slocum's G. L. c. 176D claim.

The orders of the Superior Court judges dismissing the complaints are reversed. These matters are remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*