Flannery, J.
The plaintiff, Nuclear Metals, Inc. (NMI), seeks a declaration pursuant to G.L.c. 231A that the statutory assessment charged it by the defendant, Massachusetts Low-Level Radioactive Waste Management Board (Board), is unconstitutional either because it is a tax or because it violates the Commerce Clause of the United States Constitution. NMI also seeks a declaration that the assessment scheme is violative of the due process clause of the United States Constitution because the statute and regulations fail to provide for a hearing prior to notice of a violation. Finally, NMI challenges the substance of the assessment by way of an administrative appeal. G.L.c. 31A, §1 et seq.
BACKGROUND
The material facts are undisputed. The plaintiff, Nuclear Metals, Inc. (NMI), is a manufacturer that produces low-level radioactive wastes as a by-product of its manufacturing processes. Massachusetts currently does not have a facility for disposal of low-level radioactive wastes. Therefore, in-state producers of low-level radioactive wastes must either store the waste or ship it for disposal or treatment to facilities in four other states.
The federal government in 1986 required that each state be responsible for disposal of in-state produced low-level radioactive wastes. 42 U.S.C. §2021c(a)(l). Massachusetts responded to that directive by establishing the Massachusetts Low-Level Radioactive Waste Management Board (Board) to plan for managing such waste in Massachusetts. General Laws c. 111H, §2. The legislature also established the Low-Level Radioactive Waste Management Fund to “provide funds to implement the management plan.” The law required the Board to make annual assessments of those licensed to deal with radioactive materials in Massachusetts to “defray the costs annually incurred by the board for such purposes.” Id. at §4A. The assessments were to be based upon “the volume and classification of radioactivity of waste produced by each licensee and registrant which is shipped for disposal off site or stored for later disposal. . .”
Pursuant to its legislative mandate, in 1992, the Board assessed NMI $102,103.76 in fees. NMI refused to pay the assessment and, on June 1, 1992, requested a hearing before the Board on the assessment. Citing its regulations, the Board denied NMI a hearing. The Board issued a Notice of Violation based on NMI’s failure to pay. Ultimately, on September 18, 1992, a hearing was held at the Division of Administrative Law Appeals. The Board, with some exceptions, on October 4, 1992, adopted the October 1, 1992 decision of the Administrative Magistrate. NMI challenges the assessment on a variety of constitutional grounds as well as by an administrative appeal.
DISCUSSION
A constitutional, procedural, or substantive challenge to regulatory law may be asserted in a declaratory judgment action. Liability Investigative Fund Effort, Inc. v. Medical Malpractice Joint Underwriting Association, 409 Mass. 734 (1990); Beth Israel Hospital, Inc. v. Rate Setting Commission, 24 Mass.App.Ct 495 (1987); G.L.c. 30A, §1, et seq.; G.L.c. 111H, §4A(a). The duty of the court is to make binding declarations concerning the issues in controversy, thus putting the controversy to rest. Zaltman v. Davis, 331 Mass. 458 (1954).
I. Challenge to the Assessment as a Tax
A tax is “a revenue-raising exaction imposed through generally applicable rates to defray public expense." German v. Commonwealth, 410 Mass. 445, 448 (1991) (quoting Opinion of the Justices, 393 Mass. 1209, 1216 (1984)). The true nature of a charge, be it tax or fee, is determined by studying its operational effect and not by its legislative characterization.[2] Em *26 erson College v. Boston, 391 Mass. 415, 424 (1984). “The burden of proving that the charges are not fees rests on those who challenge their legality.” Southview Co-operative Housing Corp. v. Rent Control Board of Cambridge, 396 Mass. 395, 403 (1985). “Fees imposed by a governmental entity tend to fall into one of two principal categories: user fees ... or regulatory fees . . .” Emerson College, supra at 424.
Fees share common traits which distinguish them from taxes. Id. To determine the true nature of the assessment the court applies a three-part test. Id. The first inquiry is whether the fees “are charged in exchange for a particular government service which benefits the party paying the fee in a manner ‘not shared by other members of society.’ ” Id. Next, the court asks whether “they are paid by choice, that is can the payor opt out of using the government service and, thus, avoid the charge.” Id. at 424-25. The final question is whether “the charges are collected not to raise revenues but to compensate the government entity providing the services for its expenses.” Id. at 425.
Applying the Emerson three-prong test to the facts now before me, I find the assessment made by the Board to NMI is a fee and not a tax.[3] Analogizing to Emerson College, NMI contends that assuring the safe disposal of radioactive waste benefits the general public in the same sense that containment of fire benefits the public at large.
In Emerson College, the City of Boston assessed to the owners of already existent large buildings a separate fee for augmented fire protection. The court held that “[t]he benefits of ‘augmented’ fire protection are not limited to the owners of [the affected] buildings. The capacity to extinguish a fire in any particular building safeguards not only the private property interests of the owner, but also the safety of the building’s occupants as well as that of surrounding buildings and their occupants ... In a large, densely populated city like Boston, ‘the prevention of damage to buildings by fire is an object which affects the interest of all the inhabitants and relieves them from a common burden and danger.’ ” Id. at 425-26 (citations omitted). The analogy fails because the services provided for disposal of low-level radioactive waste are for the benefit of, and sufficiently particularized to, NMI who is the party required to pay the charges.
While the public may be benefited in an attenuated way, it is NMI who is particularly benefited. NMI’s for-profit manufacturing process creates the problem that the board is federally mandated to address. The focus of the plan is to cure the potential problems initiated by NMI and similarly situated companies. It is NMI, the producer of the waste, to which the privilege of using the disposal site will inure, not the general public. See Bertone v. Department of Public Utilities, 411 Mass. 536, 549 (1992); Southview, supra at 402 (landlords petitioning for rent increases beneficiaries of services provided by rent control board; filing fee not a tax); Winthrop v. Winthrop Housing Authority, 27 Mass.App.Ct. 645, 647 (1989); Commonwealth v. Caldwell, 25 Mass.App.Ct. 91, 95-96 (1987) (“mooring and slip fee” assessed to boat owners by harbormaster not a tax). Contrast Emerson, supra at 425-26 (assessment is tax where benefits of augmented fire protection in densely settled urban area inure to safety interests of public at large); Berry v. Town of Danvers, 34 Mass.App.Ct. 508 (1993) (increased sewer connection fees benefit all users of sewer system; not particularized to new connectors).
Second, NMI argues that it is unable to opt out of paying the fee because its only meaningful choice would be to relinquish its federally granted licenses that allow it to use its manufacturing processes to produce low-level radioactive waste. This argument is without merit. NMI is “not ‘compelled’ to pay the [assessment]. . . Fees are not taxes ‘even though they must be paid in order that a right may be enjoyed.’ ” Bertone, supra at 549 (citations omitted); Winthrop, supra at 647 (“although one connecting a particular sewer to the common sewers must pay the user charges, the charges nevertheless are only imposed on those choosing to use the service”). In addition, NMI may choose to opt out or control the amount of its assessment via judicious employment of its manufacturing process which produces the radioactive waste or by sending its waste to a treatment rather than to a disposal facility.
Third, the legislation mandating the assessment specifically and strictly ties the fees generated to compensation of the cost of the particular government service. The assessment is “earmarked for paying expenses incurred in providing the services for which the charge was imposed or destined instead [of] for a broader range of services or the general fund.” Berry, supra at 513 (citing Emerson College, 391 Mass, at 417). Any fees collected in excess of amounts expended by the board in pursuing its legislative mandate must be refunded to those paying the assessment. G.L.c. 111H, §4(A)(a), (b).
Thus, based upon application of the Emerson College three-part test to the facts of this case, I conclude that the assessment to NMI for the management fund is a fee, and not a tax.[4]
II. Commerce Clause Challenge
NMI also argues that the assessment scheme violates the commerce clause of the United States Constitution because only waste shipped out-of-state for disposal is assessed a fee. The commerce clause “directly limits the power of the States to discriminate against interstate commerce.” West Lynn Creamery Inc. v. Commissioner of the Department of Food & Agriculture, 415 Mass. 8, 14 (1993) (quoting Wyoming v. Oklahoma, 112 S.Ct. 789, 800 (1992)). Thus, “economic protectionism” — burdening out-of-state com *27 petitors to benefit in-state economic interests — is prohibited. Id. at 15.
NMI’s argument fails because there is no burden whatsoever placed on out-of-state competitors. Contrast Aronson v. Commonwealth, 401 Mass. 244 (1987) (10% tax on interest earned by Massachusetts residents in out-of-state banks, versus 5% tax for in-state bank interest discriminatory). Nor is there a concomitant benefit to in-state interests. Thus, the commerce clause is not implicated because no issue of prohibited protectionism is raised by the statutory scheme.
III. Due Process Challenge
To find a violation of due process there must be first, a deprivation of a constitutionally protected property right and second, the procedures provided by the state that cause deprivation of the constitutionally protected property interest must be inadequate in light of the interest affected. See Pittsley v. Warish, 927 F.2d 3, 6 cert. denied, 112 S.Ct. 226 (1st Cir. 1991). However, the court does “not decide constitutional questions unless they must necessarily be reached.” Commonwealth v. Paasche, 391 Mass. 18, 21 (1984). “All statutes must be construed, where capable, so as to constitute a harmonious whole consistent with the legislative purpose .. .” Labor Relations Commission v. Board of Selectmen of Dracut, 374 Mass. 619, 624 (1978).
NMI argues that the regulations promulgated by the Board violate the due process clause of the United States Constitution because the regulations fail to provide for a hearing after assessment of the fee due and before notice of a violation. The gravamen of NMI’s due process deprivation argument is that it has no means of challenging an assessment except to withhold payment, thus triggering a violation for which the regulations allow a hearing. NMI claims that there is no mechanism for judicial or administrative review of the actual assessments made by the Board, rather there is only an enforcement mechanism for exacting penalties.
The fundamental problem with NMI’s contention is that it ignores the very process it now uses to bring its controversy before the court. The statutory scheme authorizes use of the declaratory judgment proceeding to challenge the Board’s assessments. G.L.c. 30A; 111H; 231A. Availability of the declaratory judgment proceeding satisfies any possible constitutional requirement for a hearing. See Haverhill Manor, Inc. v. Commissioner of Public Welfare, 368 Mass. 15, 30 cert. denied, 96 S.Ct. 277 (1975). In addition, the State Administrative Procedure Act clearly states that an agency or the reviewing court may stay enforcement proceedings. G.L.c. 30A, §14(3). See Longo v. Board of Appeal on Motor Vehicle Liability Policies and Bonds, 356 Mass. 24, 27-28 (1969).
Whether or not constitutionally protected due process concerns are raised in this instance, the procedure provided within the statutory scheme is constitutionally sufficient. Thus, NMI’s procedural due process claim is without merit.
IV. Administrative Appeal
NMI timely requested a hearing subsequent to notification of a violation due to failure to pay the assessment. Before the Administrative Magistrate for the Division of Law Appeals, NMI challenged the assessment on a variety of substantive grounds.[5] The Administrative Magistrate decided in favor of the Board; the board in substance adopted that decision. NMI is now before the court pursuant to G.L.c. 31A, §14 appealing the decision of the Administrative Magistrate.
Appeal of the assessment was not properly before the Administrative Magistrate. The regulations specifically designate and limit the jurisdiction of the Administrative Magistrate to a hearing on the civil penalties aspect of the statutory scheme.[6] As discussed in the prior section of this memorandum, III. Due Process Challenge, the statutory scheme authorizes use of the declaratory judgment proceeding to challenge the Board’s assessments. The court has exclusive jurisdiction to determine the substantive validity of an assessment made pursuant to the Low-Level Radioactive Waste Board’s authority. Thus, because the Administrative Magistrate lacked authority, in the first instance, to hear this dispute, I order that decision vacated and dismiss Count II of plaintiffs complaint.[7]
ORDER
Based on the foregoing, it is ORDERED that as to Count I of the plaintiffs complaint, a DECLARATION ENTER that:
(1) the statutory assessment charged by the defendant, Massachusetts Low-Level Radioactive Waste Board, for the Low-Level Radioactive Waste Management Frond is a fee and not an unconstitutional tax,
(2) the assessment scheme does not violate the commerce clause of the United States Constitution, and
(3) the procedure provided by the law of the Commonwealth, the statutory scheme, and the regulations is constitutionally sufficient under the due process clause of the United States Constitution.
It is further ORDERED, as to Count II of the plaintiffs complaint, that the decision of the Administrative Magistrate is VACATED and Count II, the appeal pursuant to G.L.c. 30A, §14, is DISMISSED.

 Thus, the extensive documentation of the statute’s legislative history presented to the court by NMI, while interesting, is not dispositive of the live issue in the case which is the operational effect of the assessment.

 Because I declare this assessment a fee rather than an unconstitutional form of taxation, NMI’s arguments that the legislature impermissibly delegated, without adequate administrative and/or judicial oversight, too much discretion to the Board to set the tax rate and that a federal license is an improper subject of a state tax are moot.

 “The principle is familiar that, within reasonable limits, the legislative department of government in mitigation of a public evil may place the cost on those in connection with whose business the evil arises. ” Howes Bros. Co. v. Unemployment Compensation Commission, 296 Mass. 275, 284 cert. denied, 300 U.S. 657 (1937).

 First, NMI claims the Administrative Magistrate improperly allocated the burden of proof to NMI. Second, NMI challenges as error of law or lacking in substantial evidence: failure of the Board to apportion the assessment by vote, inclusion of improper data in calculating the assessment, failure to include data on stored waste, and arbitrary or inconsistent treatment of waste sent to Utah, Florida and Tennessee. Finally, NMI challenges the validity of the regulation, 845 CMR 4.02, which excludes federal and municipal government waste.

 “If the board finds, after notice of any violation of §4A and an opportunity for a hearing have been provided, that any person is not in compliance with any requirement of §4A, or with any provision of any regulation adopted thereunder, it may assess civil penalties in an amount determined pursuant to this section. Such civil penalty may be imposed whether or not the violation was willful. In determining the amount of the civil penalty, the board shall consider the willfulness of the violation: the actual and potential cost to the Commonwealth of collecting the assessment and a penalty to enforce such requirement; whether the person being assessed the civil penalty did everything reasonable to pay the assessment, and to pay promptly after a notice of violation was issued; whether the person being assessed the civil penalty has previously failed to comply with any requirement of §4A, or with any provision of any regulation adopted thereunder; the financial condition of the person being assessed the civil penalty.” G.L.c. 111H, §4B(a). See also 845 CMR 4.04(1) et. seq.

 In addition, NMI’s challenge to the Board’s regulation excluding federal and state entities from the assessment scheme as brought pursuant to G.L.c. 30A, §14is not properly before the court for a second reason. An action for judicial review of an agency regulation must be brought in accord with G.L.c. 30A, §7 which requires such a challenge be brought directly to the court by declaratory judgment action, and not to the Division of Administrative Law Appeals. See id.; Beth Israel Hospital, Inc. v. Rate Setting Commission, 24 Mass.App.Ct. 497 (1987).