McCann, J.

INTRODUCTION

Massachusetts Electric Company is represented by Stephen G. Doucette, Esq. The defendant Granby Telephone and Telegraph Company is represented by Michael J. Moriarty, Esq. A dispute has arisen over the enforcement of contractual rights and rates for the use of telephone poles to maintain telephone lines. The defendant Granby Telephone and Telegraph Company filed a Motion for Summary Judgment. Appropriate opposition was filed. Massachusetts Electric Company filed a Cross Motion for Summary Judgment.

FACTUAL BACKGROUND

Massachusetts Electric Company (MEC) commenced this action to recover damages from Granby Telephone and Telegraph Company (GTT) as a result of an alleged breach of a license agreement and unauthorized use of MEC’s utility poles in the Town of Granby. MEC’s fifteen-count complaint asserts seven Counts in breach of contract, seven Counts in quantum meruit, and one Count in trespass.[1]
The facts are largely undisputed. MEC and GTT are utilities within the meaning of G.L.c. 166, §25A. MEC provides electricity to several Massachusetts communities, including the Town of Granby (“Granby”). GTT is a Massachusetts Corporation in the business of providing telephone service to Granby.
MEC owns certain utility poles in Granby to which GTT has affixed its telephone lines. GTT’s use of MEC’s poles is an attachment within the meaning of G.L.c. 166, §25A. The attachments were the subject of previous written license agreements between the parties, extending back to 1965. The most recent written license agreement terminated on December 31, 1988, and thereafter, the parties have not entered into another written license agreement. GTT has continued to maintain attachments on MEC’s poles. GTT has also continued to make payments to MEC for the use of its poles. MEC accepted payment from GTT until 2001.[2]
From 1965 through 1989, the parties agreed to a pole attachment fee of $3.11. On October 28, 1993, MEC notified GTT of an increase in the pole attachment rate to $13.77, effective January 1, 1994. Thereafter, on November 20, 1997, MEC notified GTT of another increase in the pole attachment rate to $15.81, effective February 1, 1998. Those amounts have not been paid.
The parties dispute whether GTT owes MEC outstanding monies based upon the increased pole attachment rate. The parties agree that upon the expiration of the 1984 License Agreement on December 31, 1988, they never entered into another written agreement in regard to fees. Each party contends that they have attempted in good faith to reach a new agreement. MEC alleges that GTT refused to enter into serious negotiations regarding a new agreement and has continued to pay MEC annually based upon the prior $3.11 rate. A series of meetings, conversations and correspondence, both written and e-mail took place between the parties regarding the alleged outstanding balances; however, the parties disagree significantly on the substance and consequences of those conversations and meetings.
The parties are both “utilities” and every count of the complaint in the matter before this Court involves “attachments” as those terms appear in G.L.c. 166, §25A. Therefore, this matter is within the regulatory jurisdiction of the Massachusetts Department of Telecommunications and Energy (DTE) as provided by the statute. That was the case prior to the filing and service of the complaint in this matter. M.G.L.c. 166, §25A, 220 CMR 45.00 et seq.
Neither party brought this matter before the DTE to determine the reasonableness of the attachment fee. MEC brings the current action (in both contract and quantum meruit) seeking the alleged balance or the fair market value for GTT’s use of its poles, based upon the increased pole attachment rate. MEC also alleges that GTT has committed an ongoing trespass and seeks a court order requiring GTT to remove its cables and equipment from MEC’s utility poles.

ISSUE PRESENTED

Whether subject matter jurisdiction over Massachusetts Electric Company’s (“MEC”) complaint falls within the primary jurisdiction of the Department of Telecommunications and Energy (“DTE”). This matter is now pending before the court on defendant GTTs motion for summary judgment on all Counts pursuant *526 to Mass.R.Civ.P. 56. MEC also moves for summary judgment on its breach of contract and quantum meruit claims (Counts I-XIV).

DISCUSSION

A. Subject Matter Jurisdiction
GTT contends that the court lacks jurisdiction because the subject matter of the complaint falls explicitly and exclusively within the DTE’s jurisdiction pursuant to G.L.c. 166, §25A. MEC responds that the Superior Court has jurisdiction over contract disputes and also has jurisdiction to adjudicate MEC’s claims pursuant to general principles of equity, therefore, the doctrine of primary jurisdiction is inapplicable.
The doctrine of primary jurisdiction provides that “(i]f an agency has the regulatory power to afford a plaintiff relief, exhaustion of the possibility of remedial agency action should ordinarily precede independent action in the courts.” Columbia Chiropractic Group, Inc. v. Trust Ins. Co., 430 Mass. 60, 62 (1999) (citations omitted). It is a doctrine exercised in the discretion of the court. Id.
The doctrine of primary jurisdiction is inapplicable “when the issue in controversy turns on questions of law which have not been committed to agency discretion.” Casey v. Mass. Electric Co., 392 Mass. 876, 879-80 (1984), quoting Murphy v. Admin of the Div. of Personnel Admin., 377 Mass. 217, 221 (1979).
G.L.c. 166, §25A provides: “(t]he department of telecommunications and energy shall have the authority to regulate the terms and conditions applicable to attachments, . . . and upon its own motion or upon petition of any utility or licensee shall determine and enforce reasonable rates, terms and conditions of use of poles or of communication ducts or conduits of a utility for attachments of a licensee in any case in which the utility and licensee fail to agree.” The parties agree that the court lacks jurisdiction to determine the “reasonableness” of a pole attachment rate. This Court agrees.
The causes of action set forth in MEC’s complaint, on the face of the complaint, fall within the court’s jurisdiction. The complaint seeks damages from GTT for breach of contract or in quantum meruit for the fair market value for the use of its poles upon the termination of the license agreement and trespass. The Superior Court has jurisdiction over contract disputes pursuant to G.L.c. 212, §4. The Superior Court also has general equity jurisdiction pursuant to G.L.c. 214, §1. Strictly speaking, the reasonableness of the attachment rate is not before the court. Moreover, the DTE cannot redress the wrongs alleged by MEC because MEC seeks monetary damages. See Liability Investigative Fund Effort, Inc. v. Medical Malpractice Joint Underwriting Assoc, of Massachusetts, & others, 409 Mass. 734 (1991) (noting party entitled to bring common-law contract claims in a judicial rather than administrative forum if the agency lacks jurisdiction).
GTT does not dispute that parties may privately negotiate pole attachment arrangements, including pole attachment rates. Indeed, the parties have done just that over the course of decades.
By way of affidavit, GTT also acknowledges that although GTT and MEC have entered into numerous written license agreements, the parties have also operated at other times without any written agreement.
What is problematic is the doctrine of primary jurisdiction appears to be inapplicable; and the Court does have jurisdiction of the causes of action set forth in the complaint namely breach of contract, quantum meruit and trespass. Yet, the determination of all of those issues rests exclusively upon the determination of a reasonable rate which will establish the foundation for the claims set forth in the complaint. Absent a determination of a reasonable rate leaves no basis for the court to find a fact or rule on law on any of the claims. Both parties agree as does the Court that the Court lacks jurisdiction to determine the “reasonableness” of the pole attachment rate, with which the Court agrees.
The Court concedes that on the strict reading of the complaint the doctrine of primary jurisdiction is inapplicable. However, given the unique facts of the case and the inability of the Court to determine the “reasonableness” of a pole attachment rate, it is necessary for that rate to be established before the Court can proceed on the issues raised before it.
Under G.L. 166, §25A, the DTE on its own motion, or MEC or GTT upon the petition of either, or joint petition of both, can proceed before the DTE for a determination of a reasonable rate. For reasons not known to this Court, none have chosen to do so. The language of the statute, mandatory in nature, is very explicit that DTE shall have the authority to regulate the terms and conditions applicable to attachment, and shall determine reasonable rates.
Consequently, the Court deems it necessary to apply the doctrine of primary jurisdiction on the basis that the issues of contract, quantum meruit and trespass cannot be addressed by the court unless and until a reasonable rate is established and given the unique set of circumstances raised by the facts in this case. This Court therefore rules that the doctrine of primary jurisdiction is applicable.
For the reasons set forth, the Massachusetts Electric Company’s Motion for Summary Judgment is DENIED and the Motion for Summary Judgment by the defendant Granby Telephone and Telegraph Company is ALLOWED.

ORDER

After hearing, argument, and review of the respective memoranda Massachusetts Electric Company’s Motion for Summary Judgment is DENIED, Granby Telephone and Telegraph Company’s Motion for Sum *527 maiy Judgment is ALLOWED, however, summary judgment shall be entered without prejudice.

This court notes there appears to be an error with respect to the numbering of the Counts in the Amended Complaint. Counts XII and XIII are repeated. Here, the second Count XII is referred to as Count XIV, and the second Count XIII is referred to as Count XV.
The complaint reads:
Count I. Breach of Contract (Jan. 1, 1995-Dec. 31, 1995)
Count II. Quantum Meruit (Jan. 1, 1995-Dec. 31, 1995)
Count III. Breach of Contract (Jan. 1, 1996-Dec. 31, 1996)
CountlV. Quantum Meruit (Jan. 1, 1996-Dec. 31, 1996)
CountV. Breach of Contract (Jan. 1, 1997-Dec. 31, 1997)
Count VI. Quantum Meruit (Jan. 1, 1997-Dec.31, 1997)
Count VII. Breach of Contract (Jan. 1, 1998-Dec. 31,1998)
Count VIII. Quantum Meruit (Jan. 1, 1998-Dec. 31, 1998)
Count IX. Breach of Contract (Jan. 1, 1999-Dec. 31, 1999)
Count X. Quantum Meruit (Jan. 1, 1999-Dec. 31, 1999)
CountXX Breach of Contract (Jan. 1, 2000-Dec. 31,2000)
Count XII. Quantum Meruit (Jan. 1, 2000-Dec. 31, 2000)
Count XIII. Breach of Contract (Jan. 1, 2001-Dec. 31, 2001)
Count XIV. Quantum Meruit (Jan. 1, 2001-Dec. 31, 2001)
Count XV. Trespass (Jan. 1, 1989-present)

MEC alleges in its complaint that GTT has only made “partial payments” for the use of its utility poles. It appears that over the years MEC has accepted “partial” payment, except for GTTs 2001 payment (Count XIII), which “MEC refused” according to the complaint.